JENKINS *v.* EMPLOYMENT SECURITY COMMISSION.

UNEMPLOYMENT COMPENSATION—VOLUNTARILY LEAVING WORK—DISCHARGE—DISQUALIFICATION FOR BENEFITS—EQUALLY DIVIDED COURT. Judgment of circuit court affirming determination that plaintiff had left his employment voluntarily and without good cause attributable to his employer, where he left his employment of his own volition at noon the day before Christmas contrary to his foreman's orders and was discharged when he presented himself for work the day after Christmas, hence, disqualified from receiving unemployment compensation benefits, is affirmed by an equally divided court (CLS 1956, § 421.29).

Appeal from Ingham; Hughes (Sam Street), J. Submitted January 3, 1961. (Docket No. 5, Calendar No. 48,445.)   Decided September 23, 1961.

Certiorari by Ross E. Jenkins against the Michigan Employment Security Commission, its Appeal Board, and Clinton Machine Company to review denial of his claim for unemployment benefits. Judgment upholding claimant's disqualification on ground he had voluntarily left work. Plaintiff appeals. Affirmed by an equally divided court.

*Harold A. Cranefield* and *John A. Fillion* (*Gordon A. Gregory,* of counsel), for plaintiff.

TALBOT SMITH, J. (*for reversal*). The plaintiff and appellant before us is Ross E. Jenkins. His com-

REFERENCES FOR POINTS IN HEADNOTES

3 Am Jur, Appeal and Error § 1160; 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds §§ 35, 38.

plaint is that he has been unlawfully deprived of his unemployment compensation benefits.

It came about in this way: He wanted to drive his wife and child to her mother's home in Otsego for Christmas Eve. This had been a tradition in the family. But Otsego was over a hundred miles away, and plaintiff was anxious to complete his trip before nightfall. Not only was his car old and unreliable, but he was leery of night driving with his family.

Consequently, he explained the situation to his foreman and asked him "to okay [his] card to get holiday pay" even though he left at noon on December 24th. The request was refused on the ground that the production schedule would not permit it. Plaintiff was warned that he would not get his holiday pay unless he worked a full 8 hours on December 24th but he replied "Well I'll just forget the holiday pay then. I'd rather lose that than I would take a chance on having an accident and maybe killing some of my family." Plaintiff did not return to work after the lunch hour, went to the home of his wife's mother, and returned to work at the normal time the day after Christmas. He was then discharged.

The validity of the discharge is not before us. It is not argued. That is a matter of company policy or of contractual stipulation. But when appellant subsequently filed a claim for unemployment compensation benefits it was ruled that he had been discharged for "misconduct" in connection with his work and hence could not receive such benefits. On appeal, however, the appeal board reversed the referee's finding of disqualifying misconduct[1] but,

---

[1] On this phase of the case the appeal board held as follows:

"After a careful review of the records in this matter, this board cannot agree with the decision of the referee and the holding of the commission in its redetermination that the claimant had disqualified himself for benefits by committing an act of misconduct connected with his work. The generally accepted definition of misconduct connected with work is stated in *Boynton Cab Co.* v. *Neubeck*, 237 Wis 249 (296 NW 636), recognized and cited by the Michigan Supreme

it went on to rule, the plaintiff had "left his work voluntarily without good cause attributable to the employer" within the meaning of section 29(1)(a)(1) of the Michigan employment security act[2] and was thus disqualified from receiving unemployment benefits. The circuit court for the county of Ingham affirmed upon this ground alone, stating that the appeal board had "correctly applied the law in its decision" and that the appellant had voluntarily quit his job. The sole question the plaintiff-appellant puts to us is the following:

"Can an employee, who punched out 4 hours early on Christmas Eve with knowledge that he would forfeit holiday pay and did not have express permission to leave but reported for work at the usual starting time on the next regularly scheduled work day, be said to have 'left his work voluntarily without good cause attributable to the employer or employing unit' so as to be disqualified for unemployment com-

Court in *Cassar* v. *Employment Security Commission*, 343 Mich 380, at pages 405, 406, as follows:

" 'Conduct evincing such wilful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligences in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.'

"This appeal board is of the opinion that the record in this matter does not support a finding that the claimant by leaving at noon on December 24, 1957, had so acted that his conduct should be considered to be within the above quoted definition of 'misconduct connected with his work.' "

The circuit court concluded that the finding of lack of disqualifying misconduct was not contrary to the great weight of the evidence and hence could not be reversed. See section 38 of the act. CLS 1956, § 421.38 (Stat Ann 1960 Rev § 17.540).

In connection with *Cassar*, cited *supra*, see overruling thereof as to unauthorized strike in *Linski* v. *Employment Security Commission*, 358 Mich 239.

[2] CLS 1956, § 421.29(1)(a)(1) (Stat Ann 1960 Rev § 17.531[1][a][1]).

pensation under section 29(1)(a)(1) of the Michigan employment security act?"

What we have before us, as we noted, is not the validity of the discharge. What is before us is the validity of the penalty imposed in addition to the discharge, namely, the loss of benefit rights. The finding that an employee has "left his work voluntarily without good cause attributable to the employer" results in a disqualification which, like that for misconduct, not only cancels the employee's past employment credits but also denies unemployment compensation "until and unless claimant becomes re-employed long enough to again accumulate the necessary credits."[3] That this is a penalty there can be no doubt. See *Cassar* v. *Employment Security Commission*, 343 Mich 380, 392 (dissenting opinion); *Linski* v. *Employment Security Commission*, 358 Mich 239; *Boynton Cab Co.* v. *Neubeck*, 237 Wis 249 (296 NW 636).

Since we are about to discuss a legal fiction it would be well to keep the facts clearly in view. When claimant returned to work he was discharged. He did not quit, voluntarily or otherwise. In fact, there was nothing whatever voluntary, from his standpoint, in his severance. He was, simply put, fired because of what he had done. But to sustain the appeal board, and the lower court, in depriving him of his unemployment compensation, we must call an out-and-out firing something exactly the opposite, namely, a voluntary quitting. How can this be done? Legally, it is done very simply—by the use of a fiction, by treating one thing "as if" it were another. What the lower tribunals have said is that we will treat Jenkins' violation of the company rules "as if" it were a quitting. So treated the act deprives him of unemployment compensation.

---

[3] *Linski* v. *Employment Security Commission*, 358 Mich 239, 240.

But fictions are properly employed in statutory construction only to effectuate the intent and purpose of the act. Here the fiction is employed for the purpose of maintaining plant discipline. The workman is told that if he violates reasonable company rules he will not only be fired but he will thereafter lose his unemployment compensation. There is no doubt, of course, that the maintenance of proper discipline in a plant is beneficial both to management and to labor. There may, as well, be ample room in the law today for intelligent and carefully considered legislation that will give effect to the complex problems of both management and labor in this area. But in the absence of specific legislation will we back into it[4] by using the employment security act as a little labor-relations act?

This, then, is the basic issue before us: Whether or not the intent of the act contemplates and comprehends its use as a disciplinary tool. Its use in this way may be very easily accomplished. A workman breaks a company rule. For this he may be discharged, as was the claimant before us. Then, when he later applies for unemployment compensation, he is told, as here, that he cannot have it because he "quit." Of course, he didn't quit. He was fired. But, the employer argues, it is just as if he quit because he disobeyed reasonable company rules and regulations.

Underlying this argument is a confusion between the general welfare, considerations of which caused the passage of the unemployment compensation acts,[5] and the welfare of a particular employer or employee, often including disciplinary problems, a confusion sometimes found in the early compensation

---

[4] The expression is that of Paul H. Sanders, employed in his careful study, "Disqualification for Unemployment Insurance," found at 8 Vand L Rev 307, 314.

[5] See Taft, Economics and Problems of Labor (3d ed 1955), pp 107–112.

cases.[6] The two are not always, or necessarily, synonymous. In *Carmichael* v. *Southern Coal & Coke Co.,* 301 US 495 (57 S Ct 868, 81 L ed 1245, 109 ALR 1327), one of the landmark cases in this field, the United States supreme court held (p 518) that the extension of benefits to "those discharged for misconduct" did not cause a constitutional infirmity. The majority stated very simply that the injurious effects of unemployment are not limited to the unemployed worker, "even though unemployment results from his discharge for cause." Mr. Justice Cardozo then reminded us, if reminder at the time, 1937, were needed, that "disaster to the breadwinner meant disaster to dependents."[7] We are likewise remitted, as were these courts, to the matter of the legislative intent in passing this act. But we need not again walk the familiar path. We have taken this journey in past cases, some of which are cited, *supra.* It is the disqualification for the voluntary quit which is here under particular scrutiny. As to it the law merely says, in substance, that if a workman voluntarily quits his job he is not entitled to unemployment compensation. The theory here is clear enough: What the act seeks to guard against is the hazard to it, to the economy, and to the workman himself, of compensable self-induced unemployment.

But the hazard guarded against, as we have heretofore held, is an actual voluntary leaving, not a constructive one. Of course, as a matter of legal theory, we can always "construct" a voluntary quit out of something else, just as we can construct an "eviction" while a tenant is still in the premises. But such theory, that of the "constructive" voluntary

---

[6] See Horovitz, Injury and Death Under Workmen's Compensation Laws (1944), pp 99–108, 122–126.

[7] *Steward Machine Co.* v. *Davis,* 301 US 548, 586 (57 S Ct 883, 81 L ed 1279, 109 ALR 1293).

leaving we rejected, unanimously, many years ago. It was then argued to us that when the employees rejected a reduced wage scale, as an alternative to a shut-down, and cessation of work followed, their action, in legal effect, constituted "a voluntary leaving of work by members of the union."[8] Our Court rejected this "as if" argument, stating bluntly that "we are not as yet prepared to accept and apply the doctrine of constructive voluntary leaving."[9] We are still unprepared to accept and apply such doctrine, neither found in the act we are called upon to interpret nor germane to its purposes.

The legislators might, it is true, use any or all of the remedial social legislation acts either as sticks or carrots. Thus, speaking broadly, it is within their power to deny workmen's compensation to those who have broken the rules of employment, or to deprive all such offenders of unemployment compensation and thus remit them to charity if they remained unemployed for any substantial period of time after the commission of the offense for which they were discharged. The severity of the punishment inflicted would thus depend upon such factors as the general labor market in the area, and State and national economic conditions, none of which is related to the offense. The punishment would, moreover, be levied with a fine, even-handed justice upon all alike, the trivial offenders sharing, with the more serious, its Procrustean rigors, until hiring in the locality started again. We find, however, within the act under consideration no intent on the part of the legislature to impose punishments utterly haphazard, in both severity and application, under the guise of remedial social legislation and we therefore reject it.

---

[8] *Copper Range Co.* v. *Unemployment Compensation Commission,* 320 Mich 460, 467.
[9] *Id.* at 469.

The interpretation here made finds support in our neighboring State of Ohio. In the case of *Knowles* v. *Roberts,* 66 Ohio Abs 345 (117 NE2d 173), the claimant did not report for work on a Saturday, the tenth day of unexcused absence within 6 months. Under a collective bargaining agreement, such absence caused a termination of employment. It was held by the referee and board of review that the claimant had voluntarily quit his work without just cause and therefore was not entitled to unemployment compensation under the provisions of the act.[10] In reversing the court held in part as follows:[11]

"Here the claimant was denied work after presenting himself for the same on the Monday following the Saturday of his absence. The decision of the referee which was affirmed by the board contains this language: 'By his own action, he forced his separation from the payroll and as such same must be and is herein considered to be a voluntary quit.' We cannot agree with the referee on the aforesaid conclusion. We think the finding should have been that by his own action he caused the contract to be terminated, but can compensation be denied solely because of the termination of the employment contract? We do not think so, as long as the claimant meets the requirements of section 1345-6 GC, *et seq.,* and has not voluntarily quit his work without just cause. The rights of the claimant to benefits under the unemployment compensation act must be determined under the provisions of said act and not under the terms of an agreement with his employer for any agreement tending to reduce the statutory benefits would be void as being against public policy. The word 'voluntary' imports an exercise of the will.

---

10 The governing Ohio statute provided as follows:
"No individual may * * * be paid benefits * * * [who] voluntarily quit his work without just cause." Ohio Gen Code (1A Page 1946 Replacement), § 1345-6 d(9).
11 *Knowles* v. *Roberts,* 66 Ohio Abs 345-347 (117 NE2d 173-175).

Here it consisted of choosing not to work on Saturday and because of such the claimant was discharged under the provisions of the contract. Since its terms may not be considered in arriving at the benefits to which the claimant is entitled, it must follow that he did not voluntarily quit his work. The discharge appears to be a disciplinary action on the part of the employer and not a voluntary quit by the employee. The discharge was justifiable under the contract. But this fact does not prevent the employee from receiving the benefits to which he is entitled under the law and which must be liberally construed."[12]

It is abundantly clear on this record that the claimant did not quit, but was fired. There is not a scintilla of proof that he was ever presented with an either/or choice, either stay on the job or lose it. Absence was related to holiday pay, not to discharge. The elements of misconduct recently found by us to exist in *Bell* v. *Employment Security Commission*, 359 Mich 649, were clearly not present, as the appeal board properly found. The case is thus left standing upon the naked proposition that the claimant's leaving "his employment of his own volition at 11:30 a.m. on December 24, 1957," being both "voluntary" and "without good cause attributable to the employer" was a quit under the act. Upon such basis the case cannot be sustained. The proposition is erroneous. The voluntary quit means an abandonment of the contract of employment, a leaving with no intention of returning. Claimant's efforts merely to get time off for a specific purpose, combined with his return immediately upon its accomplishment, refute any contention that he intended to leave his job permanently. Valid his discharge under these circumstances may have been. That is not the ques-

---

[12] See current Ohio Statute, Code 1960 Supp (Page), § 4141.29 (D) (2) (a), for provisions respecting discharge for cause as added ground for ineligibility.

tion. But the act does not warrant the imposition of a penalty under such circumstances and, as we held in *Sullivan* v. *Employment Security Commission*, 358 Mich 338, 341:

"The legislature did not make provision for disqualification under the facts in this case. It is not the proper function of this Court to amend the statute to broaden or extend the disqualifications fixed by plain language by the legislature. Whether such a disqualification ought to be inserted in the act is an argument that should be presented to the legislature and not to this Court."

The judgment should be reversed and remanded to circuit court for further proceedings not inconsistent herewith. Costs to appellant.

EDWARDS, KAVANAGH, and SOURIS, JJ., concurred with TALBOT SMITH, J.

CARR, J. (*for affirmance*). The question involved in this case is whether the plaintiff Ross E. Jenkins is entitled to unemployment compensation under the terms of the Michigan statute.* The employment security commission denied plaintiff's application, which denial was reaffirmed on a redetermination. The matter was then appealed to a referee before whom testimony was taken. Pursuant to conclusions reached, the finding of the commission was affirmed on the ground that plaintiff was disqualified because of misconduct connected with his work.

After listening to the proofs the referee summarized his finding of facts as follows:

"The claimant was employed with the Clinton Machine Company beginning November 4, 1955, as a welder and last worked for this employer on

* PA 1936 (Ex Sess), No 1, as amended (CL 1948 and CLS 1956, § 421.1 *et seq.* [Stat Ann 1960 Rev § 17.501 *et seq.*]).

December 24, 1957. At the time of his separation he had been working for a period of a few weeks as a trim press operator, which was in a different department from that in which he had previously worked. On his last day of work the claimant contacted his union representative concerning a desire to leave work at noon for the purpose of making a trip to Otsego, Michigan, to visit relatives over the holiday. He was notified that he should take his request to his foreman. Claimant, thereupon contacted his foreman that morning and inquired whether he would lose holiday pay if he left early on that day. He was notified that he would lose holiday pay if he failed to work the full day, and was further informed that he did not have permission to leave early. At this time the employer had a heavy production schedule to meet and, although it had received requests from several employees similar to the claimant's, such requests had been denied for this reason. In one instance an individual was given permission to go home due to personal illness. In another case, an employee requested to go home to care for her children and such request was denied, due to the production schedule.

"The claimant's shift started at 7:00 a.m. with a lunch period beginning at 11:30 a.m. to 12 noon. The claimant punched out his time card at the beginning of the lunch period and did not return for further work in the afternoon. On December 26, 1957, he reported back for work and was notified to go to the personnel office, where the claimant received notice that he was terminated from this employment.

"The issue involved in this appeal is whether claimant was discharged for misconduct connected with his work to subject him to disqualification under the provisions of section 29(1)(a)(2) of the act.

"Although the claimant denied that he was definitely informed by his foreman that he could not leave work early, it was also indicated that his foreman had not given him permission to leave prior to the end of his shift. The preponderance of the

evidence, however, revealed that, although the employer had received several requests from employees to leave early on this day such requests had been refused with 1 exception due to personal illness. It was further shown that the claimant had been informed concerning his request as to whether he would lose holiday pay if he did not work his full shift and, further, he was not given permission to leave early on this date. Under the circumstances, the claimant's absence, after refusal to grant him permission to leave early, was not only contrary to the employer's best interests, but was not in keeping with his duties and obligations as an employee. Accordingly, the redetermination, which held that the claimant's separation was for misconduct connected with his work, must be affirmed. He is, therefore, disqualified under the above-mentioned section of the act from December 24, 1957, and for the duration of his unemployment. Accordingly, wages earned with this employer may not be used to compute or pay benefits and no benefit year may be established by the claim filed on January 23, 1958."

The foregoing summary of occurrences leading to termination of plaintiff's employment is fully supported by the record in the case and was accepted by the defendant appeal board on appeal thereto. The board came to the conclusion that the conduct of the plaintiff was such as to constitute a voluntary leaving of his employment without good cause attributable to the employer within the meaning of section 29(1)(a)(1) of the act (CLS 1956, § 421.29 [Stat Ann 1960 Rev § 17.531]). Accordingly compensation was denied. On appeal the order of the appeal board was affirmed by the circuit court of Ingham county. In accordance with the statute plaintiff has appealed to this Court, asserting that under the terms of the employment security act, above cited, his application for compensation should have been granted.

The purpose of the legislature in the enactment of the statute has been repeatedly pointed out in prior decisions of this Court. It was specifically declared in section 2 thereof (CL 1948, § 421.2 [Stat Ann 1960 Rev § 17.502]) that it was intended to assist those entitled to benefits under the act "by the setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." It is necessarily implied by the language of the statute that one who has been separated from employment as the result of his own fault is not entitled to payments from the reserve fund created pursuant to the statutory directions. Section 29 of the act specifies certain conditions that shall constitute disqualifications for benefits. Among the reasons listed as disqualifying are that the individual concerned has "left his work voluntarily without good cause attributable to the employer or employing unit," or "has been discharged for misconduct connected with his work."

In the instant case, as appears from the finding of facts of the referee and the appeal board, plaintiff on the 24th of December, 1957, desired to leave his work at noon. His reasons for so doing were wholly personal, and had nothing to do with the nature of his work. He was advised by an official of the union to which he belonged, and whom he consulted for advice, to take the matter up with his foreman. He did so, and for sufficient reasons that clearly appear permission to quit at noon was not granted. Notwithstanding such fact plaintiff left his work. On behalf of the employer it is claimed that it was its policy to consider the act of an employee in leaving his job under such circumstances as a voluntary quitting.

In its report to the security commission (exhibit 5 in the return of the appeal board to the writ of certiorari issued by the circuit court) it was as-

serted by the employer that plaintiff had "walked off the job. Considered automatic quit." Exhibit 7 in said return contained a like claim with the further assertion that when plaintiff returned and was asked by his foreman why he had walked off the job, plaintiff replied: "I told you I was going, and I did." Such reply, if made as claimed in the exhibit, clearly indicated the attitude of the plaintiff. The testimony of the foreman on the hearing before the referee corroborates the statements in the exhibits.

The appeal board pointed out in its opinion that plaintiff left his employment of his own volition without good cause attributable to the employer. Citing prior decisions of the board involving analogous facts, it was held that such conduct constituted a disqualification under the express language of the statute. The circuit judge agreed with such conclusion and affirmed the order entered. We think that such order was supported by the facts in the case as disclosed by the proofs and, in consequence, was properly affirmed. Under section 38 of the statute (CLS 1956, § 421.38 [Stat Ann 1960 Rev § 17.540]) the decision of the appeal board insofar as it was based on facts was not subject to reversal by the circuit court unless contrary to the great weight of the evidence. *Nobes* v. *Unemployment Compensation Commission,* 313 Mich 472; *Kalamazoo Tank & Silo Company* v. *Unemployment Compensation Commission,* 324 Mich 101. It was not so contrary in the instant case, as the circuit judge correctly held.

In accord with the holding of the circuit judge is the case of *Olechnicky* v. *Director of the Division of Employment Security,* 325 Mass 660 (92 NE2d 252). Reviewed there was an administrative order denying unemployment benefits to the plaintiff on the ground that he had left his employment: "Voluntarily without good cause attributable to the em-

ploying unit or its agent." The district court to which an appeal was taken so held, and applied a provision of the State statute specifying that: "The findings of the board of review as to the facts, if supported by any evidence, shall be conclusive." In upholding the order the appellate court said (p 663), after referring to the finding by the board of review, that plaintiff had terminated his employment by voluntarily leaving it:

"We construe this as a finding of fact that the employee did voluntarily leave his employment within the meaning of subsection 1. This finding of fact was supported by evidence. It is binding on us."

That plaintiff deliberately left his employment is not open to question. There was no overpowering necessity for his action. He wished to take the half day for purposes of his own, and, without reference to the production schedule of his employer, he proceeded to do so. Quite possibly he thought that his act would be overlooked and that he could continue in his employment when he returned, but such misapprehension on his part does not alter the situation. If he could walk off the job as he did, obviously other employees had the same privilege. Had they pursued the same course as did plaintiff, the employer might well have been confronted with a serious situation. If plaintiff had elected to quit work until after the 1st of January, the issue presented would have been no different in principle than in the instant case. The statute, in referring to an employee quitting his employment, draws no distinction based on the length of time that he chooses to absent himself.

Plaintiff separated himself from his employment on December 24, 1957, by his own act. When he sought to return on the 26th, he was denied the right to do so. The relationship of employer and

employee had already been terminated. Under the factual situation here before us, and in accordance with the findings of the referee and the appeal board, plaintiff was not actually discharged on December 26th. What was said and done on said date was rather in recognition of the fact that plaintiff had quit his employment on the 24th. Affirmative action by way of a formal discharge by the employer was not required, for the reason stated.

As indicated at the outset, the question here before us is whether plaintiff is entitled to unemployment compensation on the basis of the factual situation presented. In deciding that he was not entitled to the benefits of the employment security act, the commission, the referee, the appeal board, and the circuit court were not punishing him for any dereliction on his part, but were merely withholding from him statutory unemployment benefits to which he was not entitled. Such withholding may not be regarded as punishment. Plaintiff is not within the spirit or the letter of the statute under which he claims that payments from the reserve fund should be made to him. The language of the statute excludes him from its beneficent provisions, and such situation results wholly from his own deliberate conduct.

The order of the circuit court of Ingham county affirming the finding of the appeal board of the Michigan employment security commission is affirmed.

Dethmers, C. J., and Kelly, J., concurred with Carr, J.

Black, J. (*for affirmance*). As in *Lyons* v. *Employment Security Commission*, 363 Mich 201, the appeal board found that the plaintiff employee left work of his own volition and without good cause

attributable to the employer. The proof did not dictate, yet amply supported, such finding. Once this is ascertained, the judicial function ends.

Wearily and verily I record again that this is an appellate Court; that we do not try or hear unemployment benefit cases *de novo,* and that it should make no difference on review whether the employee or the employer prevails before the appeal board once we find proof which legally supports the board's decision to award or deny benefits. See separate opinions, *Bell* v. *Employment Security Commission,* 359 Mich 649, 653, and *Lyons, supra,* at page 228.

The circuit court properly affirmed. So should this Court. My vote is cast accordingly.