RAZMUS v KIRKHOF TRANSFORMER

Docket No. 70674. Submitted December 12, 1983, at Grand Rapids.—
Decided June 22, 1984.

Stanley Razmus was fired from his job at Kirkhof Transformer in
accordance with a collective-bargaining agreement in effect
between Razmus' union and Kirkhof after Razmus committed
his third violation of shop rules. Razmus applied for unemploy-
ment benefits. The Michigan Employment Security Commission
denied benefits to Razmus on the ground that he was fired for
misconduct and therefore was ineligible for benefits under the
Michigan Employment Security Act. A MESC hearing referee
and the MESC Board of Review subsequently upheld the deci-
sion that Razmus was disqualified from collecting benefits.
Razmus appealed to the Kent Circuit Court, which affirmed the
decision of the MESC Board of Review, George R. Cook, J.
Razmus appeals. *Held:*

An employee's actions must suggest an intentional and sub-
stantial disregard of his employer's interest or his duties and
obligations to his employer before a finding of misconduct
within the meaning of the Michigan Employment Security Act
may be made. The three violations which were the basis for
Razmus' discharge, while they may have justified his discharge
under the collective-bargaining agreement, do not constitute
misconduct within the meaning of that term as it is used in the
Michigan Employment Security Act.

Reversed and remanded to the circuit court for remand to
the board of review and disposition there in accordance with
the Court of Appeals opinion.

R. L. TAHVONEN, J., dissented. He would hold that an employ-
ee's intentional and repeated violation of known work rules
may constitute misconduct for purposes of the Michigan Em-

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law § 612 *et seq.*
    76 Am Jur 2d, Unemployment Compensation § 94.
[2-4] 76 Am Jur 2d, Unemployment Compensation § 52.
    Work-connected inefficiency or negligence as "misconduct" barring
    unemployment compensation. 26 ALR3d 1356.
[3, 4] 76 Am Jur 2d, Unemployment Compensation § 53.

ployment Security Act and that where an employee is discharged for intentional and repeated violation of known work rules, as in this case, unemployment benefits are properly denied. He would affirm.

OPINION OF THE COURT

1. UNEMPLOYMENT COMPENSATION — APPEAL — SCOPE OF REVIEW — CONSTITUTIONAL LAW — STATUTES.

The Court of Appeals may review questions of law or fact in an appeal from a decision of the Michigan Employment Security Commission Board of Review but will reverse only if the decision is contrary to law or is unsupported by competent, material and substantial evidence on the record.

2. UNEMPLOYMENT COMPENSATION — DISQUALIFICATION FOR BENEFITS — MISCONDUCT.

The term *misconduct,* as used in connection with disqualification of an employee for unemployment compensation benefits, is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer; mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute (MCL 421.29[1][b]; MSA 17.531[1][b]).

3. UNEMPLOYMENT COMPENSATION — DISQUALIFICATION FOR BENEFITS — MISCONDUCT.

The violation of an employer's rules or a provision of a collective-bargaining agreement is not, per se, misconduct within the meaning of the statute which disqualifies from collecting unemployment benefits employees discharged for misconduct (MCL 421.29[1][b]; MSA 17.531[1][b]).

DISSENT BY R. L. TAHVONEN, J.

4. UNEMPLOYMENT COMPENSATION — DISQUALIFICATION FOR BENEFITS — MISCONDUCT — WORK RULES.

*Unemployment compensation benefits properly may be denied to an employee discharged on the basis of misconduct where the*

discharge is caused by the employee's intentional and repeated violation of known work rules (MCL 421.29[1][b]; MSA 17.531[1][b]).

*Legal Aid of Western Michigan* (by *Scott T. Trost* and *Daniel Bates)*, for Stanley Razmus.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Jack Blumenkopf,* Assistant Attorney General, for Michigan Employment Security Commission.

Before: D. E. HOLBROOK, JR., P.J., and BRONSON and R. L. TAHVONEN,* JJ.

PER CURIAM. Claimant, Stanley Razmus, appeals as of right a circuit court order affirming a decision of the Michigan Employment Security Commission Board of Review disqualifying him from eligibility for unemployment benefits pursuant to MCL 421.29(1)(b); MSA 17.531(1)(b) because of misconduct. We reverse.

Razmus was terminated from employment with Kirkhof Transformer on April 7, 1981. He was discharged in accordance with a collective-bargaining agreement in effect between his union and Kirkhof after he committed his third "Group II" violation of shop rules. The Group II violations which justified his discharge included two violations of wasting time and loitering on company property and one violation of safety rules.

A hearing was held before a referee to review the decision of the MESC disqualifying Razmus from eligibility for unemployment benefits. Testimony was taken at the hearing before the referee regarding the circumstances surrounding the violations.

* Circuit judge, sitting on the Court of Appeals by assignment.

The first violation occurred on January 17, 1981. Razmus testified that he had just finished doing some welding and was waiting for the lead to cool. While he was waiting, he went to the cafeteria to buy a pack of cigarettes, get his lunch, and bring it back to his work area. While walking back to the work area, the foreman came up to him and wrote him up for wasting time and loitering. Razmus claimed that his going to get cigarettes did not interfere with his job and that other employees similarly left to get cigarettes.

On January 22, 1981, the foreman reprimanded and wrote up Razmus for not wearing his safety glasses. Razmus admitted that he knew safety glasses were required, but claimed that he only took off the glasses for a short time because they kept slipping off. There was testimony that other employees did not always wear safety glasses.

The third violation occurred on April 7, 1981. Razmus had finished welding and, while waiting for the lead to cool, he went out to his car to get some cigarettes and to check on the car's battery because he had had problems with it earlier in the day. Razmus claimed that before going outside he looked for his foreman to obtain permission, but couldn't find him. Razmus was absent from his work station for 20 to 25 minutes.

The chief union steward testified that a grievance was filed against the company for acting maliciously in discharging Razmus. He claimed that, although it was against company rules, other employees went to the cafeteria during work time. He felt that Razmus was being singled out by the employer.

The hearing referee determined that the three violations amounted to misconduct within the meaning of MCL 421.29(1)(b); MSA 17.531(1)(b).

The decision was affirmed by the MESC Board of Review and the circuit court. On appeal from decisions of the MESC Board of Review, this Court may review questions of law or fact, but will reverse only if the board's decision is contrary to law or unsupported by competent, material, and substantial evidence on the record, MCL 421.38[1]; MSA 17.540[1]. *Chrysler Corp v Sellers,* 105 Mich App 715; 307 NW2d 708 (1981). In the instant case, where there is no dispute as to the underlying facts, this Court must decide whether Razmus' actions were, as a matter of law, misconduct within the meaning of MCL 421.29(1)(b); MSA 17.531(1)(b).

The Michigan Supreme Court has defined the type of misconduct sufficient to disqualify an employee from receiving unemployment benefits.

" 'The term misconduct * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.' " *Carter v Employment Security Comm,* 364 Mich 538, 541; 111 NW2d 817 (1961), quoting from *Boynton Cab Co v Neubeck,* 237 Wis 249, 259-260; 296 NW 636 (1941).

In his decision, the referee noted that Razmus' violations were arguably "minute", but stressed

that the rules were part of the collective-bargaining agreement. The violation of an employer's rules or a provision of the collective-bargaining agreement is not, per se, misconduct within the meaning of the statute. *Linski v Employment Security Comm,* 358 Mich 239; 99 NW2d 582 (1959); *Jones v Employment Security Comm,* 4 Mich App 300; 144 NW2d 795 (1966).

In *Linski, supra,* the Supreme Court held that an employee's participation in a strike prohibited by the collective-bargaining agreement did not evince an "intentional and substantial disregard of the employer's interests". In *Jenkins v Employment Security Comm,* 364 Mich 379; 110 NW2d 899 (1961), an employee was discharged because he left early on Christmas eve after he was refused permission to do so. The Supreme Court stated that the elements of misconduct were clearly not present. On the other hand, an employee's continual violations of an employer's rules may amount to a substantial disregard of the employer's interests. *Booker v Employment Security Comm,* 369 Mich 547; 120 NW2d 169 (1963).

We hold that the three violations which were the basis for Razmus' discharge do not constitute "misconduct" within the meaning of MCL 421.29(1)(b); MSA 17.531(1)(b). Razmus' actions do not suggest an intentional and substantial disregard of his employer's interests or of his duties and obligations to his employer.

The safety violation, if anything, evinces an intent to further his employer's interest. Razmus removed his safety glasses because they kept falling off and interfering with his helping a new employee.

Razmus' first violation occurred when he left for only a few minutes to get a pack of cigarettes from

the cafeteria. The third violation occurred when
he left for 20 to 25 minutes to check on the
battery in his car. On both occasions, Razmus left
his work station only after he had finished welding
and was waiting for the lead to cool. Two other
employees verified Razmus' assertion that other
employees sometimes temporarily left their work
station to go to the cafeteria.

The purpose of the Michigan Employment Secu-
rity Act is to alleviate the distress of unemploy-
ment. *Linski, supra,* p 245. Razmus' violations may
have justified his discharge under the collective-
bargaining agreement, but they do not constitute
misconduct such as is necessary to justify the
denial of unemployment compensation benefits.
Such a denial would serve only to impose a sanc-
tion unwarranted by precedent or public policy.

Reversed and remanded to circuit court for re-
mand by it to the board of review and disposition
there in accord with this opinion.

R. L. TAHVONEN, J. *(dissenting).* I respectfully
dissent.

I believe that the three violations, in the aggre-
gate, constituted misconduct as that term is used
in MCL 421.29(1)(b); MSA 17.531(1)(b). When the
"distress of unemployment" is caused by the em-
ployee's intentional and repeated violation of
known work rules, benefits are properly denied.