*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRAVIS H. ANDERSON,

      Claimant-Appellant,

UNPUBLISHED
November 10, 2022

v

WRIGHT COATING COMPANY, INC.,

      Respondent-Appellee,

and

DEPARTMENT OF LABOR AND ECONOMIC
OPPORTUNITY / UNEMPLOYMENT
INSURANCE AGENCY,

      Appellee.

No. 357295
Kalamazoo Circuit Court
LC No. 2020-000459-AE

Before: SAWYER, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Claimant, Travis H. Anderson, appeals by leave granted[1] the circuit court's order affirming the decision of the Michigan Unemployment Insurance Appeals Commission (the Commission) that Anderson had voluntarily quit his employment and was therefore ineligible to receive unemployment benefits. We affirm.

## I. BACKGROUND

To give context to our discussion of the substantive and procedural facts, we begin with a recitation of the relevant statutory provision in this case, MCL 421.29(1)(a), which provides,

---

[1] *Anderson v Wright Coating Co, Inc*, unpublished order of the Court of Appeals, entered October 8, 2021 (Docket No. 357295).

subject to an inapplicable exception, that an individual is disqualified from receiving unemployment benefits if the person:

> Left work voluntarily without good cause attributable to the employer or employing unit. An individual who left work is presumed to have left work voluntarily without good cause attributable to the employer or employing unit. An individual who is absent from work for a period of 3 consecutive work days or more without contacting the employer in a manner acceptable to the employer and of which the individual was informed at the time of hire is considered to have voluntarily left work without good cause attributable to the employer. . . . An individual claiming benefits under this act has the burden of proof to establish that he or she left work involuntarily or for good cause that was attributable to the employer or employing unit.

In April 2020, Anderson worked as a forklift operator at respondent, Wright Coating Company, Inc. (WCC). Anderson refused to wear the company-provided facemask in accordance with WCC's COVID-19 policy, and he was suspended from work for several days. When Anderson returned to work on April 27, 2020, he met with Kent Rudlaff, a manager at WCC, about the suspension. At WCC, employees accumulate demerit points for misconduct, and a total of 14 points is grounds for termination. At the meeting on the morning of April 27, Rudlaff informed Anderson that he would be receiving demerit points for the days that he was suspended, which angered Anderson. At this point, the parties disagree about what transpired next. Anderson testified that he was upset after the meeting and decided to leave work early that day—he left mid-shift. Anderson claimed that he spoke with several people, including Rudlaff, about leaving early and that he believed that he had permission to leave. Anderson also testified that he checked with the human resources department (HR) to make sure that he would not be at risk of termination if he accumulated another half demerit point for leaving work early. Rudlaff testified, however, that he did not speak with Anderson after the meeting and that no one representing WCC gave Anderson permission to leave. When Anderson returned to work the next day, Rudlaff told him that WCC took the position that Anderson had abandoned his job and quit when he left early the previous day. WCC did not fire or terminate Anderson because he had left work; rather, WCC would not allow Anderson to return to work because he had quit his job.

Anderson filed for unemployment benefits with appellee, Michigan Department of Labor and Economic Opportunity / Unemployment Insurance Agency (the Agency). Anderson initially received a determination by the Agency that he was eligible to receive unemployment benefits because he had been terminated by WCC. But the Agency later sent Anderson a determination that he was ineligible for benefits because Anderson had voluntarily quit his job with WCC in accordance with MCL 421.29(1)(a). Anderson formally protested the determination of ineligibility, but the Agency affirmed its determination. Anderson appealed the determination of ineligibility to the Michigan Department of Licensing and Regulatory Affairs. A phone hearing was conducted by an administrative law judge (ALJ). Anderson, HR manager Jodi Bohnsack, and Rudlaff participated in the hearing. The testimony alluded to earlier was elicited at this hearing.

According to Anderson, he spoke to his line supervisor about leaving early on April 27, 2020, as well as to Rudlaff and an individual in HR named Molly. The ALJ did not find Anderson's testimony credible, explaining that Anderson waffled a little when asked whether he

had permission to leave and that Rudlaff testified that he did not even speak to Anderson after the morning meeting. The ALJ also noted Rudlaff's testimony that WCC's handbook policy stated that an employee is considered to have quit if he or she leaves work without permission. The ALJ recognized that Rudlaff did not have a specific discussion with Anderson in which it was communicated to Anderson that leaving early absent permission was the equivalent of voluntarily quitting.

The ALJ determined that Anderson may have received *acknowledgment* that he was leaving, but that *acknowledgment* was not the same as being granted *permission* to leave. The ALJ found that "[w]hen an employee walks off the job without permission, particularly under circumstances such as this—where the claimant took the time to calculate points, etc[.], the employer is entitled to consider it job abandonment." The ALJ concluded that Anderson had voluntarily quit his job, and the ALJ thus affirmed the Agency's decision that Anderson was not eligible to receive unemployment benefits pursuant to MCL 421.29(1)(a). Anderson appealed the ALJ's determination to the Commission, which affirmed the ruling.

Anderson proceeded to appeal the Commission's decision to the circuit court. Anderson argued that the Commission's ruling was contrary to law and not supported by competent, material, and substantial evidence. Anderson contended that the Commission erred when it determined that Anderson had voluntarily left his employment because the only scenario under the statute in which an individual can be deemed to have voluntarily left his or her employment is when the person goes three consecutive work days or more without contacting the employer. According to Anderson, he only left work for half a day, and even if permission were lacking, it was an error of law to conclude that he voluntarily left his employment under the language in MCL 421.29(1)(a). The Agency maintained that the ineligibility determination should be affirmed because it was consistent with law and supported by the record.

The circuit court affirmed the Commission's decision. The court noted that the testimony of the parties presented to the ALJ varied drastically and that the ALJ had credited the testimony of WCC's employees. The circuit court accorded deference to that decision and concluded that there was sufficient evidentiary support for the ALJ's factual findings. The circuit court analyzed whether Anderson had voluntarily left work without good cause attributable to his employer. The circuit court determined that the scenario set forth in MCL 421.29(1)(a)—being absent from work for three or more consecutive work days without contacting the employer—was just one but not the only manner in which an individual could voluntarily leave work or quit without good cause attributable to the employer. The circuit court therefore concluded that the Commission's decision that Anderson voluntarily left work, i.e., voluntarily quit, without good cause attributable to his employer was supported by competent, material, and substantial evidence, and it affirmed the Commission's ruling. Anderson appeals by leave granted.

## II. ANALYSIS

On appeal, Anderson argues that the circuit court's conclusion that he voluntarily quit or abandoned his job constituted legal error.

## A. STANDARDS OF REVIEW

In *Hodge v US Security Assoc, Inc*, 497 Mich 189, 193-194; 859 NW2d 683 (2015), our Supreme Court enunciated the standards of review governing unemployment-benefit cases:

> Michigan's Constitution sets forth the guiding principles of how courts should review a decision of an administrative body. It provides:

> "All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record."

> Consistent with this provision, the Michigan Employment Security Act, MCL 421.1 *et seq.*, expressly provides for the direct review of unemployment benefit claims. Specifically, MCL 421.34 addresses an appeal from an ALJ to the MCAC.[2] MCL 421.38 then addresses an appeal from the MCAC to a circuit court:

> "The circuit court . . . may review questions of fact and law on the record made before the administrative law judge and the Michigan compensation appellate commission involved in a final order or decision of the [MCAC], . . . but the [circuit] court may reverse an order or decision only if it finds that the order or decision is contrary to law or is not supported by competent, material, and substantial evidence on the whole record."

> Using this standard, a circuit court must affirm a decision of the ALJ and the MCAC if it conforms to the law, and if competent, material, and substantial evidence supports it. A reviewing court is not at liberty to substitute its own judgment for a decision of the MCAC that is supported with substantial evidence. The Court of Appeals then reviews a circuit court's decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings. [Quotation marks and citations omitted; alterations in original.]

An "ALJ's credibility determinations and weighing of the evidence are entitled to deference." *Shahid v Dep't of Health & Human Servs*, 333 Mich App 267, 274; 963 NW2d 638 (2020). We

---

[2] MCAC stood for the Michigan Compensation Appellate Commission, which, under Executive Order No. 2019-13, became, in part, the Michigan Unemployment Insurance Appeals Commission, which we have been referring to as the Commission.

-4-

review de novo issues of statutory construction. *Mericka v Dep't of Community Health*, 283 Mich App 29, 36; 770 NW2d 24 (2009).

## B. DISCUSSION AND RESOLUTION

The Michigan Supreme Court has interpreted the phrase "left work voluntarily" as used in MCL 421.29(1)(a) to be synonymous with quitting a job voluntarily. *Wickey v Appeal Bd of Mich Employment Security Comm*, 369 Mich 487, 499-500; 120 NW2d 181 (1963). This Court has observed that a "voluntary departure is an intentional act." *McArthur v Borman's Inc*, 200 Mich App 686, 690; 505 NW2d 32 (1993). When a person leaves work voluntarily, it means that the individual left under his or her own volition and not that the person was discharged. *Id.* at 691. Thus, the threshold question is "whether the claimant voluntarily quit the job[] or was discharged . . . ." *Clarke v North Detroit Gen Hosp*, 437 Mich 280, 285; 470 NW2d 393 (1991). In *Warren v Caro Community Hosp*, 457 Mich 361, 366-367; 579 NW2d 343 (1998), our Supreme Court stated:

> [W]e continue to hold that whether a person is entitled to unemployment benefits is a two-part inquiry. Under the first prong, we must determine whether plaintiff voluntarily left her position. If we find that she left her position involuntarily, the inquiry ends and she is entitled to unemployment compensation. Whether a person left voluntarily will depend on the particular facts and circumstances of the case. However, if the court finds that plaintiff left her position voluntarily, we must advance to prong two to determine whether her leaving was "without good cause attributable to the employer."

We note that this case does not involve any accusation by WCC of constructive voluntary leaving, which has been rejected as a basis to deny unemployment benefits. See *Thomas v Employment Security Comm*, 356 Mich 665, 669; 97 NW2d 784 (1959); *Ackerberg v Grant Community Hosp*, 138 Mich App 295, 299-300; 360 NW2d 599 (1984).[3] Furthermore, we

---

[3] In *Thomas*, 356 Mich at 669, the Supreme Court explained and rebuffed the concept of constructive voluntary leaving:

> Had claimant left his work voluntarily? Employer says that, although claimant knew the law required an operator's license for driving, he deliberately drove his automobile without one, that he thus voluntarily assumed the risk of arrest, conviction and imprisonment, resulting in the necessity of absenting himself from work, and that this was the equivalent of leaving his work voluntarily. More concisely stated, it is employer's position that an employee has left his work voluntarily if he has done a voluntary act which he knew could and which later did, in fact, cause his absence from work.

> The voluntary assumption of a risk which an employee knows may, but he trusts and assumes will not, keep him from work is not the voluntary leaving of his work. Doing an act, even though voluntarily, which results, contrary to the doer's

emphasize the second sentence in MCL 421.29(1)(a), which provides that "[a]n individual who left work *is presumed to have left work voluntarily without good cause* attributable to the employer or employing unit." (Emphasis added.) This language was not part of MCL 421.29(1)(a) until 2002. See 2002 PA 192. And it creates a presumption that an employee who left work did so voluntarily absent good cause. In other words, there is a statutory presumption that the employee voluntarily quit if he or she left work.

Within the analytical framework discussed above, we hold that the circuit court applied correct legal principles and did not misapprehend or misapply the substantial evidence test. *Hodge*, 497 Mich at 193-194. Although Anderson claimed that he did not quit and that he did not intend to quit, the ALJ did not find Anderson's testimony in that respect credible. Similarly, while Anderson contended that he spoke to several people about leaving early, including Rudlaff, and that he believed that he had permission to leave, the ALJ credited the testimony that contradicted Anderson's assertions and discounted Anderson's testimony. We defer to the ALJ's credibility assessments. *Shahid*, 333 Mich App at 274. Deferring to those assessments, we must conclude that the circumstances effectively entailed Anderson's walking away from his job in the middle of his shift. Then, a reasonable inference arising from such circumstances is that Anderson abandoned or quit his job. The fact that Anderson returned the next day as if nothing had happened does not erase his conduct from the previous day and establish that he had not quit. He may very well have regretted his actions in leaving work, which reasonably indicated that he had abandoned his job, and then attempted to walk-back his decision by simply returning and resuming his job. We cannot conclude that Anderson satisfied his burden of proof, let alone that he overcame the statutory presumption, by demonstrating that he did not quit, such that there was a misapprehension or misapplication of the substantial evidence test, keeping in mind the deference given to credibility determinations. And there is no evidentiary basis to countermand the finding that WCC did not discharge Anderson.

It is necessary for us to address *Jenkins v Appeal Bd of the Mich Employment Security Comm*, 364 Mich 379; 110 NW2d 899 (1961), in which, by equal division, our Supreme Court affirmed the trial court's ruling denying unemployment benefits to the claimant. To the extent that the lead opinion in *Jenkins* governs our legal analysis, the instant case is distinguishable. In *Jenkins*, the claimant left work four hours early on Christmas Eve without express permission and with the understanding that he would forfeit holiday pay, and he then reported for work at the usual starting time on the next regularly scheduled work day and was promptly discharged. *Id.* at 380-381. Although the circuit court's ruling denying unemployment benefits was effectively upheld, the lead opinion concluded:

> hopes, wishes and intent, in his being kept forcibly from his work is not the same as voluntarily leaving his work. The statute mentions the latter, but not the former, as an act disqualifying for benefits. [W]e are not as yet prepared to accept and apply the doctrine of constructive voluntary leaving[.] [Quotation marks, citation, and ellipsis omitted.]

It is abundantly clear on this record that the claimant did not quit, but was fired. There is not a scintilla of proof that he was ever presented with an either-or choice, either stay on the job or lose it. Absence was related to holiday pay, not to discharge. [*Id.* at 387.]

In this case, a presumption applied that did not exist when *Jenkins* was issued. Moreover, here, the credited evidence was that there was no discussion of Anderson being penalized for leaving work early, termination or otherwise, as compared to *Jenkins*, wherein the claimant was told, apparently without dispute, that he would simply lose holiday pay at most for leaving early. Additionally, although a subtle point, the claimant in *Jenkins* was actually discharged or fired by his employer when he returned to work, but in this case WCC merely informed Anderson that he could not return because the day before he had quit his job.

In sum, we conclude that the circuit court properly determined that the Commission's decision was not contrary to law and was supported by competent, material, and substantial evidence on the whole record. Accordingly, the circuit court applied correct legal principles and did not misapprehend or misapply the substantial evidence test.

We affirm.


/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Brock A. Swartzle