## CARTER v. EMPLOYMENT SECURITY COMMISSION.

1. UNEMPLOYMENT COMPENSATION—DISQUALIFICATION FOR BENEFITS—MISCONDUCT CONNECTED WITH WORK.

 The term *misconduct*, as used in connection with disqualification of an employee for unemployment compensation benefits, is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer (CLS 1956, § 421.29).

2. SAME—MISCONDUCT—DISQUALIFICATION FOR BENEFITS.

 The refusal of an employee to carry out the reasonable order of his foreman, coupled with a threat to assault the latter when he offered to do the work himself, is misconduct connected with the work disqualifying the employee from unemployment compensation benefits (CLS 1956, § 421.29).

3. SAME—MISCONDUCT—DISQUALIFICATION FOR BENEFITS.

 Plaintiff employee's claim that disobedience to foreman's order to put lead dust (dross) into furnace which the employée was assigned to operate was motivated by fear of personal injury *held*, not substantiated by testimony adduced, hence, insufficient to show the foreman's order was unreasonable, therefore, plaintiff was not entitled to unemployment compensation following discharge (CLS 1956, § 421.29).

4. CERTIORARI—EMPLOYMENT SECURITY COMMISSION—FINDING OF FACTS—EVIDENCE.

 It was error for the circuit court on certiorari to the appeal

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 38.
 What amounts to "misconduct" which precludes benefits under unemployment compensation act to discharged employees. 146 ALR 243.
[4] 42 Am Jur, Public Administrative Law § 211.
[5] 14 Am Jur, Costs § 106.

board of the employment security commission to reverse latter's decision, where the finding of facts by the board was supported in the record (CLS 1956, § 421.38).

5. COSTS—UNEMPLOYMENT COMPENSATION—MISCONDUCT CONNECTED WITH WORK—DISQUALIFICATION FOR BENEFITS.

No costs are awarded on appeal in proceeding to recover unemployment compensation benefits upon reversal of circuit court order in favor of plaintiff discharged employee, where record supports finding of appeal board of the employment security commission that refusal of employee to carry out the reasonable order of his foreman accompanied by a threat of physical assault upon latter, constituted misconduct connected with the work disqualifying plaintiff for such benefits (CLS 1956, § 421.29).

Appeal from Wayne; Gilmore (Horace W.), J. Submitted October 6, 1961. (Docket No. 38, Calendar No. 48,892.) Decided November 30, 1961.

Arthur Carter presented his claim against Detroit Lead Corporation, a Michigan corporation, for unemployment compensation following discharge for refusal to obey orders. Claim denied on basis of misconduct. On certiorari the decision of the appeal board of the Employment Security Commission was vacated. Defendant commission appeals. Reversed and remanded for entry of order denying compensation based on findings and opinion of appeal board.

*Rothe, Marston, Mazey, Sachs & O'Connell,* for plaintiff.

*Paul L. Adams,* Attorney General, *Joseph B. Bilitzke,* Solicitor General, and *E. J. Setlock,* Assistant Attorney General, for defendant commission.

*Amicus Curiae:*

*Beaumont, Smith & Harris* and *Frank E. Cooper,* for Michigan Employers' Unemployment Compensation Bureau.

EDWARDS, J. This is an appeal from the Wayne circuit court in which appellant Michigan employment security commission contends that an employee discharged by a corporation should be disqualified from unemployment compensation benefits because of misconduct. The facts as found by the referee and appeal board of the Michigan employment security commission indicated that the discharge was based on the employee's refusal to carry out a foreman's order, and his subsequent threat to punch the foreman in the nose. The circuit judge held that this was not misconduct within the meaning of the statute. We reverse.

Plaintiff Arthur Carter was employed by the Detroit Lead Corporation. He was assigned to operate a furnace. During the last day claimant worked, the president of the company noticed a pile of lead dust (dross) on the floor in front of Carter's furnace; and he instructed the foreman, Veerett Davis, to have Carter shovel the dross into the furnace. When the foreman directed Carter to shovel the dross into the furnace, Carter refused to do so. Davis then said he would shovel the dross in himself. At this point Davis contends (and Carter denies) that Carter threatened to punch him in the nose if he did. Davis reported this episode to his general manager and was told to leave Carter alone, and the following day the general manager discharged Carter.

The events as recited above are essentially as they were found by the referee, and as affirmed by the majority of the appeal board of the Michigan employment security commission with 1 member dissenting. In this regard, claimant's brief concedes:

"The claimant does not dispute these facts, except that he states that he did not threaten the foreman. However, for the purposes of this argument, and this appeal, we must concede that he did threaten the foreman, since such was the finding of the referee,

adopted by the appeal board, and there was evidence in the record which can support such finding."

This case was heard on certiorari by a Wayne circuit judge who held that the acts of claimant as stated above did not meet the definition of misconduct previously set forth by this Court in *Cassar* v. *Employment Security Commission,* 343 Mich 380, and *Linski* v. *Employment Security Commission,* 358 Mich 239.

In these cases this Court adopted the classic definition of misconduct originally drafted by the Wisconsin supreme court in *Boynton Cab Company* v. *Neubeck,* 237 Wis 249, 259, 260 (296 NW 636):

"The term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.  On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute."

In our statement of the facts in this appeal, we have ignored much debate between the parties as to other actions of claimant which are claimed to have contributed to his discharge.  For purposes of this decision it is sufficient for us to note that a refusal of an employee to carry out a reasonable order of his foreman, coupled with a threat to punch him in the nose when the foreman offered to do the work

himself, is misconduct within the meaning of the statute.*

Such a response is both a wilful disregard of the employer's interests and a deliberate violation of standards of behavior which an employer has a right to expect of his employee. *Boynton Cab Company* v. *Neubeck, supra;* see, also, *Bell* v. *Employment Security Commission,* 359 Mich 649. These acts are fundamentally disruptive of orderly conduct of work and of an employer's right to direct its prosecution. *Metzger Unemployment Compensation Case (Metzger* v. *Unemployment Compensation Board of Review),* 191 Pa Super 588 (159 A2d 42) ; Virginia, App Bd Examiner Dec No S–4656–4603, CCH Unemployment Ins Reptr, § 8179.07.

See, also, 34 Halsbury's Laws of England (2d ed), p 525.

The circuit judge was in error in holding that such conduct was merely "unsatisfactory conduct" or "failure of good performance."

Claimant-appellee, however, asserts no general right to refuse to obey orders or to threaten physical violence to supervisory personnel. His contention is that this record does not show wilful disregard of the employer's rights because he contends his conduct was motivated by personal fear of the results of carrying out the orders issued.

Claimant's testimony about the episode which is relied on in this regard is:

"*Q.* Did Veerett Davis tell you to put the dross in the furnace?

"*A.* Yes, he did.

---

* The misconduct disqualification section of the Michigan employment security act, § 29 (CLS 1956, § 421.29 [Stat Ann 1960 Rev § 17.531]), provides:

"(1) An individual shall be disqualified for benefits: "(a) For the duration of his unemployment in all cases where the individual has: (1) * * * or (2) has been discharged for misconduct connected with his work or for intoxication while at work."

"*Q.* What happened at that time?

"*A.* I closed the door and I asked him to go on back to his job. I knew how to operate the job because this job is a 1-man job. Two mans can cause maybe an explosion, but 1 man can handle the job so he went on back and worked the balance of the day."

Subsequently, on cross-examination, however, claimant also testified:

"*Q.* Did you feel you were more experienced on the furnace than your foreman?

"*A.* Did I feel I were more experienced on the furnace than my foreman?

"*Q.* Yes.

"*A.* No, but I like to live. I didn't want my foreman to mess around. He just had an accident there.

"*Q.* What did you say, your foreman had an accident?

"*A.* I was there. * * *

"*Q.* Do you know what exploded?

"*A.* I sure do, a kettle.

"*Q.* Do you know what caused that explosion?

"*A.* I sure do.

"*Q.* What?

"*A.* Turned air on the kettle with too much heat. She exploded.

"*Q.* That had nothing to do with loading it with dross?

"*A.* No.

"*Q.* What gives you the impression overloading this furnace would cause an explosion?

"*A.* I didn't say that would cause an explosion.

"*Q.* You just testified that is why you didn't want to throw the dross in.

"*A.* I said I didn't want anyone to be messing with it."

There are no findings of fact before us to support a conclusion that the foreman's order was unreasonable, or that claimant's actions were motivated by personal fear. Nor do we feel that claimant's own

testimony would support such findings. It exhibits a distrust for the foreman and probable belief that he knew his job better than the foreman did. But claimant himself rejects the implication that shoveling lead dust into the furnace would cause an explosion.

It might also be noted that a threat to punch the foreman in the nose is not the customary reaction of a particularly fearful man.

We do not regard cases cited by appellant as properly applicable to the facts found by the referee and appeal board and supported in this record.*

Reversed and remanded for entry of an order based on the findings and opinion of the appeal board. No costs.

DETHMERS, C. J., and CARR, KELLY, BLACK, KAVANAGH, and SOURIS, JJ., concurred.

OTIS M. SMITH, J., took no part in the decision of this case.

---

* See CLS 1956, § 421.38 (Stat Ann 1960 Rev § 17.540).—REPORTER.