BOWNS v CITY OF PORT HURON

Docket No. 78876. Submitted March 14, 1985, at Detroit.—Decided
October 7, 1985. Leave to appeal denied, 424 Mich —.

Claimant, John R. Bowns, was discharged from his employment
as a sergeant in the Port Huron Police Department for having
observed and participated in illegal gambling activities while
off duty. Claimant made no arrests nor did he report the illegal
activities to his superiors. Claimant applied for unemployment
compensation benefits, which were denied on the basis that his
termination had been for misconduct in connection with his
work when he failed to report the illegal activities. The Michi-
gan Employment Security Commission Board of Review re-
versed, finding that the city had not shown the connection with
work necessary to disqualify claimant from benefits. The city
then appealed to the St. Clair Circuit Court which reversed the
Board of Review and held that claimant's conduct was related
to his work, Peter E. Deegan, J. Claimant appealed. *Held:*

1. Policy considerations, where as here there are no depart-
mental guidelines addressing the off-duty conduct of police
officers, require that an employee in a position of public trust,
such as a police officer, should conduct both his official and his
private life in such a way as not to bring dishonor upon his
position or to undermine his ability to function in an official
capacity.

2. Claimant's conduct amounted to a knowing disregard of
the standards of behavior which the police department had a
right to expect from him, even in the absence of a specific
regulation governing off-duty behavior. His behavior consti-
tuted misconduct connected to his employment within the
meaning of the statute. The lower court properly found claim-
ant to be disqualified for benefits.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1-3] Am Jur 2d, Unemployment Compensation §§ 91 *et seq.*
See the annotations in the ALR3d/4th Quick Index under topic
Unemployment Compensation.
[4-7] Am Jur 2d, Unemployment Compensation §§ 52 *et seq.*
Work-connected inefficiency or negligence as "misconduct" barring
Unemployment Compensation. 26 ALR3d 1356.

1. UNEMPLOYMENT COMPENSATION — APPEAL.

Questions presented on appeal from a decision of the Michigan Employment Security Commission Board of Review are to be treated as matters of law where there is no dispute as to the underlying facts.

2. UNEMPLOYMENT COMPENSATION — APPEAL.

A decision of the Michigan Employment Security Commission Board of Review will not be reversed on appeal unless it is contrary to law or is unsupported by competent, material and substantial evidence on the record (Const 1963, art 6, § 28; MCL 421.38; MSA 17.540).

3. UNEMPLOYMENT COMPENSATION — APPEAL — MISCONDUCT.

Appellate review of a decision of the Michigan Employment Security Commission Board of Review includes a review of the soundness of the board's interpretation of misconduct.

4. UNEMPLOYMENT COMPENSATION — DISQUALIFICATION FOR BENEFITS — EMPLOYEE MISCONDUCT.

The term "misconduct", as used in connection with disqualification of an employee for unemployment compensation benefits, is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer; mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not "misconduct" within the meaning of the statute (MCL 421.29[1][b], 421.69[2][b]; MSA 17.531[1][b], 17.569[19][2][b]).

5. UNEMPLOYMENT COMPENSATION — MISCONDUCT — BURDEN OF PROOF.

An employer claiming that an employee is disqualified from unemployment compensation on the basis of statutory misconduct has the burden of establishing such misconduct.

6. UNEMPLOYMENT COMPENSATION — MISCONDUCT.

A discharged employee may be disqualified from receiving unemployment compensation even though the employee's misconduct did not arise from his or her official duties, so long as the misconduct negatively affected the employer's interests.

7. UNEMPLOYMENT COMPENSATION — POLICE OFFICERS — MISCONDUCT.
    A police officer is not excused in his private life from the duty to
    avoid dishonoring the law enforcement profession or his local
    police department; therefore, a police officer who in his off-duty
    hours participated in illegal gambling activities and failed to
    stop or report those activities engaged in conduct which consti-
    tuted misconduct connected to his employment within the
    meaning of the Employment Security Act provision governing
    disqualification for unemployment compensation (MCL
    421.29[1][b]; MSA 17.531[1][b]).

*Law Offices of Black & Dean* (by *David M. Dean*), for claimant.

*Bush, Luce, Henderson, Bankson & Heyboer* (by *David R. Heyboer*), for the City of Port Huron.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Dennis J. Grifka,* Assistant Attorney General, for the Michigan Employment Security Commission.

Before: CYNAR, P.J., and D. E. HOLBROOK, JR. and R. L. TAHVONEN,* JJ.

R. L. TAHVONEN, J. Claimant, John R. Bowns, appeals as of right the circuit court's reversal of a decision of the Michigan Employment Security Commission Board of Review, which had reversed the Michigan Employment Security Commission's (MESC) denial of unemployment compensation benefits to claimant. The issue is whether the claimant's observation of and participation in illegal gambling activities, while off duty from his job with the police department, was sufficiently connected to his work to justify denial of unemployment compensation benefits. We believe it was.

The facts are undisputed. Claimant was a uniformed sergeant assigned to the patrol division in

* Circuit judge, sitting on the Court of Appeals by assignemnt.

the City of Port Huron Police Department, where he had been employed for 17 years. He supervised patrolmen assigned to his shift, and was required to patrol and respond to disturbances in Port Huron. Further, as a patrol sergeant, claimant was second in command to the shift lieutenant, in whose absence he would assume the position of platoon commander. The Port Huron police department has no specific rules or regulations which govern the behavior of off-duty police officers.

Between March and December, 1981, Gregory Riley, a special agent for the Michigan Attorney General's office, conducted an undercover investigation of the Midway Inn, a Port Huron motel. The investigation was in response to reports from the Port Huron police and Michigan State Police that sports betting, bookmaking and high stakes poker games were being conducted there.[1]

On March 13, 1981, Riley observed the claimant in the bar at the Midway Inn. Several individuals were playing a poker game called "In and Out". When one of the players left the game, the claimant played his hand until he returned. Riley noticed the claimant again at the Midway Inn on April 3, 1981. On that occasion, claimant sat near four persons who were playing a game of "In and Out" in the plain view of any patron entering the bar. He also moved around the room talking to people. "Stubby" Hill, a supplier of football pool cards, and Riley were in the bar on September 21, 1981, when claimant arrived, followed a few minutes later by William Bartlett, a known "numbers man". Claimant called to Bartlett, "Hi, numbers".

---

[1] The City of Port Huron had requested the Attorney General's intervention because of reports that local police officers, and specifically one or two sergeants, were on friendly terms with the participants in illegal activities and, possibly, were also directly "involved" in some way with the various illegal activities.

Bartlett proceeded to discuss the sale of football pool tickets and to distribute cards to bar patrons while claimant sat nearby. On October 22, 1981, Riley saw "Stubby" Hill and the claimant engaged in conversation while football pool tickets protruded from Hill's front shirt pocket. Claimant made no arrests, nor did he report to his superiors suspected violations of the state gambling or liquor laws.

Following completion of the investigation, claimant was suspended without pay. On March 8, 1982, the acting police chief, Captain Dressler, terminated claimant from the police force for conduct unbecoming a police officer and for neglect of duty.[2]

Claimant filed an application for unemployment benefits with the MESC on April 5, 1982, which the respondent city contested. The MESC determined on April 30, 1982, that the claimant was not entitled to unemployment benefits because he had been terminated for misconduct in connection with his work when he failed to report a violation of state gambling laws. Claimant appealed to the MESC referee division. An evidentiary hearing was held June 2 and 10, 1982, at which time the claimant admitted his presence in the bar, his knowledge of the gambling activities and his participation therein. He stated that he did not report the gambling activity because he was off duty. Claimant also explained that Port Huron is a small town and he had to live with the people there. He believed the gambling activity at the Midway Inn was common knowledge among police officers in Port Huron. The referee affirmed the

[2] The St. Clair County Prosecutor's Office charged claimant with "neglect of duty", a misdemeanor arising out of his at least tacit participation in gambling activities. MCL 752.11; MSA 28.746(101). Apparently, a six-member jury in the St. Clair District Court acquitted him.

MESC on June 16, 1982, finding that the claimant's actions amounted to dereliction of duty and conduct unbecoming an officer, and that such were connected to his work.

An appeal to the MESC Board of Review followed. The board, on July 27, 1983, reversed the referee's decision, finding that, while the claimant had shown poor judgment, the respondent city had not shown the "connection with work" requirement of the act where the claimant was off duty, unarmed, in civilian clothes and only minimally participating in the gambling activity. Respondent city appealed to St. Clair County Circuit Court. The court held that claimant's misconduct was related to his work, and reversed the Board of Review's decision as being contrary to law. On appeal, the claimant urges that, as a matter of law, his actions did not constitute disqualifying misconduct within the meaning of the Michigan Employment Security Act (MESA), MCL 421.1 *et seq.;* MSA 17.501 *et seq.* We affirm the circuit court for the reasons set forth herein.

We note, at the outset, that the circuit court properly reviewed the question presented as one of law, since the facts are undisputed. *Washington v Amway Grand Plaza,* 135 Mich App 652, 656-657; 354 NW2d 299 (1984); *Chrysler Corp v Sellers,* 105 Mich App 715, 720; 307 NW2d 708 (1981); *Laya v Cebar Construction Co,* 101 Mich App 26, 29; 300 NW2d 439 (1980). This Court will reverse an order of the Board of Review only if it is contrary to law or unsupported by competent, material and substantial evidence on the record. Const 1963, art 6, § 28, MCL 421.38; MSA 17.540; *Sellers, supra,* p 720; *Christophersen v City of Menominee,* 137 Mich App 776, 779; 359 NW2d 563 (1984). Appellate review includes a review of the soundness of

the Board of Review's interpretation of misconduct. *Washington, supra,* p 657.

Former section 69(2)(b) of the Michigan Employment Security Act, MCL 421.69(2)(b); MSA 17.569(19)(2)(b), provided that an individual should be disqualified for benefits where he or she has been discharged for misconduct connected with his or her work [repealed by 1982 PA 535, effective January 2, 1983; current version at MCL 421.29(1)(b); MSA 17.531(1)(b)]. The Michigan Supreme Court, in *Carter v Employment Security Comm,* 364 Mich 538, 541; 111 NW2d 817 (1961), adopted the classic definition of misconduct as it was interpreted in *Boynton Cab Co v Neubeck,* 237 Wis 249, 259-260; 296 NW 636 (1941):

"The term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute." See also, *Linski v Employment Security Comm,* 358 Mich 239, 241-242; 99 NW2d 582 (1959).

The employer's burden is to show misconduct. *Fresta v Miller,* 7 Mich App 58, 63-64; 151 NW2d 181 (1967); *Washington, supra,* p 658.

This Court has recognized that illegal or improper conduct by employees in positions of public trust may undermine their ability to function in

an official capacity and damage the prestige of the public employer. *Core v Traverse City,* 89 Mich App 492; 280 NW2d 569 (1979). The *Core* Court, in finding the conduct of an off-duty fireman who illegally hunted deer to be related to his employment, considered it important that his activities damaged the prestige of the fire department, evidenced serious disregard for law and interfered with his leadership ability. This Court upheld the discharge of a police sergeant who was observed visiting a woman while off duty and at "such hours and in such a manner as to bring discredit upon the police department", in *Righter v Adrian Civil Service Comm,* 1 Mich App 468, 470; 136 NW2d 718 (1975), *lv den* 377 Mich 696 (1966). A policeman's discharge for creating a disturbance in a bar while off duty was also upheld in *Kryvicky v Hamtramck Civil Service Comm,* 18 Mich App 344; 170 NW2d 915 (1969). Further, we note that Michigan does not require that the employee's conduct arise from his or her official duties, so long as it negatively affects the employer's interests. *Banks v Ford Motor Co,* 123 Mich App 250; 333 NW2d 239 (1983).

The Pennsylvania Commonwealth Court found a police officer's off-duty conduct to be sufficiently connected with his employment to justify denial of unemployment benefits in *Faust v Police Civil Service Comm,* 22 Pa Comm 123, 128-129; 347 A2d 765, 768-769 (1975).[3] The court invoked the follow-

[3] *Faust* was followed in *D'Iorio v Commonwealth, Unemployment Compensation Board of Review,* 42 Pa Comm 443; 400 A2d 1347 (1979), where the claimant, a criminal investigator, was denied unemployment compensation benefits when he was discharged for socializing with a convicted felon. The *D'Iorio* Court mentioned that sordid activities and associations by law enforcement personnel are incompatible with work responsibilities. In *Cadden v Unemployment Compensation Board of Review,* 195 Pa Super 159; 169 A2d 334 (1961), the Court determined it is unnecessary to have a specific employer's rule where the act of the off-duty employee was contrary to law. See also

ing policy considerations in support of its decision, quoting *Cerceo v Darby,* 3 Pa Comm 174, 183; 281 A2d 251, 255 (1971):

"Twentieth Century America has the right to demand for itself, and the obligation to secure for its citizens, law enforcement personnel whose conduct is above and beyond reproach. The police officer is expected to conduct himself lawfully and properly to bring honor and respect to the law which he is sworn and duty-bound to uphold. He who fails to so comport brings upon the law grave shadows of public distrust. We demand from our law enforcement officers, and properly so, adherence to demanding standards which are higher than those applied to many other professions. It is a standard which demands more than a forbearance from overt and indictable illegal conduct. It demands that in both an officer's *private* and official lives he do nothing to bring dishonor upon his noble calling and in no way contribute to a weakening of the public confidence and trust of which he is a repository. The record in this case indicates that the appellants acted in a questionable manner which could bring dishonor upon their profession, and which did indeed contribute to a weakening of the public confidence and trust." (Emphasis in original.)

We find these policy considerations to be particularly compelling. Therefore, we adopt them as guidelines for our evaluation of whether a police officer's off-duty behavior is connected with his work, where there is no departmental regulation addressing the off-duty behavior of police officers.

Viewing the instant case in light of the considerations previously expressed, we find that the claimant's off-duty association with, and limited participation in, gambling activities at the Midway Inn seriously interfered with his employer's interests. The claimant's conduct cast a cloud over his

*Johnson v Board of Comm'rs of the Port of New Orleans,* 348 So 2d 1289 (La App, 1977).

ability to maintain public trust, evidenced a wilful disregard for the law, and undermined his ability to function as a police officer. The claimant is not excused in his private life from the duty to avoid dishonoring the law enforcement profession, and his local police department in particular.

We hold that claimant's participation in gambling activities and his failure to stop or report them amounted to a knowing disregard of the standards of behavior which his police department had the right to expect from him, even in the absence of a specific regulation addressing his off-duty behavior. Claimant's behavior constituted misconduct connected to his employment within the meaning of the act. We therefore affirm the lower court's finding that the MESC Board of Review made an error of law in its interpretation of the "connected with work" requirement.

Affirmed. No costs, a question of public interest being involved.