TUCK v ASHCRAFT'S MARKET, INC

Docket No. 82069. Submitted October 15, 1985, at Lansing. Decided
April 24, 1986.

Dave W. Tuck was discharged from his employment by Ashcraft's
Market, Inc. He applied for unemployment benefits. The admin-
istrative referee concluded that the claimant's discharge was
for a wilful act which was sufficiently contrary to standards the
employer might reasonably expect of an employee. The MESC
Board of Review affirmed. Tuck appealed and the Gladwin
Circuit Court, Tyrone Gillespie, J., reversed, finding that Tuck's
conduct did not constitute misconduct. Ashcraft's Market, Inc.,
appealed. *Held:*

An employee is disqualified for unemployment benefits where
he has been discharged for misconduct connected with the
employment. Misconduct is limited to conduct evincing such
wilful or wanton disregard of an employer's interests as is
found in deliberate violations or disregard of standards of
behavior which the employer has the right to expect of his
employee, or in carelessness or negligence of such degree or
recurrence as to manifest equal culpability, wrongful intent or
evil design, or to show an intentional and substantial disregard
of the employer's interests or of the employee's duties and
obligations to his employer. Mere inefficiency, unsatisfactory
conduct, failure in good performance as the result of inability
or incapacity, inadvertencies or ordinary negligence in isolated
instances, or good-faith errors in judgment or discretion are not
to be deemed misconduct. Tuck's conduct did not amount to
misconduct.

Affirmed.

J. NOECKER, J., dissented. He would hold that the referee's
decision and MESC Board of Review's affirmance are supported
by competent, material, and substantial evidence on the whole

REFERENCES

Am Jur 2d, Unemployment Compensation §§ 16, 52-58, 92-94.

Work-connected inefficiency or negligence as "misconduct" barring
unemployment compensation. 26 ALR3d 1356.

See also the annotations in the ALR3d/4th Quick Index under
Unemployment Compensation.

record and that the circuit court erred in reversing that decision. He would reverse.

1. UNEMPLOYMENT COMPENSATION — APPEAL — SCOPE OF REVIEW.

The Court of Appeals may review questions of law or fact in an appeal from a decision of the Michigan Employment Security Commission Board of Review but can reverse only if the order or decision is contrary to law or is unsupported by competent, material and substantial evidence on the record (Const 1963, art 6, § 28; MCL 421.38; MSA 17.540).

2. UNEMPLOYMENT COMPENSATION — APPEAL — MATTERS OF LAW.

The questions presented in an appeal from a decision of the Michigan Employment Security Commission Board of Review are to be treated as matters of law where there is no dispute as to the underlying facts relative to the issues raised.

3. UNEMPLOYMENT COMPENSATION — APPEAL — SCOPE OF REVIEW.

The scope of appellate review of decisions of the Michigan Employment Security Commission Board of Review includes the soundness of the board's interpretation of misconduct.

4. UNEMPLOYMENT COMPENSATION — MISCONDUCT.

An employee is disqualified for unemployment benefits where he has been discharged for misconduct connected with the employment; misconduct is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer (MCL 421.69[2][b]; MSA 17.569[19][2][b], now MCL 421.29[1][b]; MSA 17.531[1][b]).

5. UNEMPLOYMENT COMPENSATION — MISCONDUCT — BURDEN OF PROOF.

The burden of proof is on the employer to show that an employee was discharged for misconduct so as to make him ineligible for unemployment benefits.

*Juneac Law Offices* (by *Jeffrey R. Juneac*), for claimant.

*Frank J. Kelley*, Attorney General, *Louis J.*

*Caruso,* Solicitor General, and *Donna K. Welch,* Assistant Attorney General, for the Employment Security Commission.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather*), for Ashcraft's Market, Inc.

Before: V. J. BRENNAN, P.J., and BEASLEY and J. NOECKER,* JJ.

PER CURIAM. The claimant, Dave W. Tuck, was discharged from Ashcraft's Market during the week of July 24, 1982. He filed for unemployment benefits on August 11, 1982. The Michigan Employment Security Commission found him ineligible for benefits on August 24, 1982. After a redetermination upholding the disqualification was issued on August 31, 1982, claimant filed an appeal for a hearing on September 8, 1982, which was held before a referee on September 28, 1982. The referee upheld the MESC's redetermination decision on October 22, 1982. Claimant appealed the referee's decision to the MESC Board of Review on November 5, 1982. The MESC Board of Review confirmed the referee's decision which had affirmed the redetermination on February 8, 1983. Claimant then filed an application for rehearing on February 24, 1983, which was denied on April 18, 1983. Claimant appealed the MESC Board of Review's decision to the circuit court, and prevailed on that appeal. Respondent, Ashcraft Market, Inc., now appeals from the Gladwin Circuit Court order which reversed the decision of the MESC Board of Review which upheld the referee's finding that claimant was discharged from employment as a result of misconduct within the meaning of former § 69(2)(b) of the Michigan Employment

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Security Act, MCL 421.69(2)(b); MSA 17.569(19)(2)(b), now covered by MCL 421.29(1)(b); MSA 17.531(1)(b), and was, therefore, disqualified for unemployment benefits.

Claimant had worked for defendant Ashcraft's Market in the meat department as a meat cutter from November, 1980, until July 22, 1982. The incident which culminated in claimant's discharge involved his unauthorized removal (from Ashcraft's) of two cartons of fish, at least one of which contained fifteen to seventeen individually wrapped packages of fish. An estimated value of $45 to $55 was given for the contents of one carton.

Bill Patch, the meat division supervisor for all of defendant Ashcraft's supermarkets, was visiting the store in Gladwin on the date claimant removed the fish. When Patch entered the store, he noticed the claimant carrying a box out of the display cooler into the meat room. He later noticed that box "tossed" in claimant's pickup truck. At the time of his initial observations, Patch did not know what was contained in the box in the truck. Later, Patch noticed that the box or one identical to the box that claimant had carried out of the cooler and into the meat room was back in the cooler and Patch thought that this was somewhat unusual. Claimant left soon thereafter (his shift was over). Patch checked out the box in the cooler and found that it contained packages of prepackaged fish. The next day, Patch looked into the cooler and found that the carton containing the fish which he had seen in the cooler the previous evening was gone. He asked the meat manager what he knew about the fish and the manager had no idea where it was or that it was taken without authorization. The claimant was approached and when confronted, he readily admitted that he had

taken the two boxes of fish the previous evening. When the claimant had left work, he had taken one box home in his truck and returned later that evening and removed the second box of fish through the back door of the supermarket.

Claimant claimed that, while he and another employee were making room in the display cooler for newly delivered products, they both noticed that the fish in question had thawed and it was no longer saleable.

Since the regular manager was gone that day, claimant felt that it was up to him to make decisions concerning what to do with the unsaleable fish. It was claimant's longstanding habit of five years to take scrap meat for bear baiting, even prior to his employment with defendant Ashcraft. The usual procedure was to remove scrap meat after it had been placed as waste in a "bone barrel" outside the rear door of the store, by driving up and emptying the contents of the bone barrel into another container in the pickup truck. The only difference on this day was that the claimant did not first place the discarded fish into the bone barrel and then dump the bone barrel contents into a container in his truck. Rather, he bypassed the bone barrel and immediately placed the nonsaleable scrap into his truck.

Bill Jesse, manager of respondent Ashcraft, claimed that it was strictly against company rules to remove inventory out the back door of the supermarket or to enter or leave the building from that door. The back door was designated for use only at times of unloading delivery trucks and for garbage removal. Such a rule was required for security reasons and claimant was informed at the time of his hire that other use of the back door was prohibited, and further, that his predecessor had been fired for unauthorized use of the back

door. In addition, the company handbook also contained a prohibition against such use and prescribed the appropriate method for removing any items from the store. Claimant acknowledged receipt of the handbook and that he had read it. Jesse steadfastly maintained that it was not within claimant's scope of authority to make a determination of whether items had outlived their shelf life and that the department head or store manager was the only person authorized to determine the appropriate disposition of nonsaleable goods be it sale to restaurants or employees at a discount or disposal in the bone barrel. The date stamped on the fish was not the expiration date but the package date. There had been no determination by anyone of appropriate authority that the fish had spoiled or that the product was outdated.

After admitting that he took the fish, the claimant was fired. He then contacted Charlie Ashcraft, owner of the market, and three days later returned all but a couple of the individual packages, all of which he brought with him to the administrative hearing held on September 28, 1982.

The administrative referee issued detailed findings of fact and concluded that the claimant's discharge was for a wilful act which was sufficiently contrary to standards the employer might reasonably expect of an employee. In concluding that the claimant was disqualified for unemployment benefits because of misconduct, the referee used the definition of misconduct found in *Carter v Employment Security Comm*, 364 Mich 538; 111 NW2d 817 (1961).

The MESC Board of Review affirmed the decision of the referee after reviewing the decision in the light of the evidence appearing in the record. The board affirmed because the decision was in conformity with the law and facts. The trial court

reversed this decision after applying the definition of misconduct in *Carter, supra.* When reversing the MESC Board of Review's decision, the court stated:

> In the instant case the Court is of the opinion that this single incident did not rise to the level of misconduct laid out in *Carter.* A finding of fact was made that the fish was unsaleable. Plaintiff mistakenly felt he had authority to decide what to do with the unsaleable fish. He breached company rules by not asking the meat manager for permission and by removing the fish by the back door.
>
> However, when asked he gave his explanation as set out above. This is not a case of wilful and wanton disregard of the employer's interest. He had found spoiled fish that smelled. Ordinarily, it would have gone in the bone barrel. That day he had been instructed to clean out the bone barrel because it smelled. He decided not to put unsaleable fish which smelled into the bone barrel. As was his habit, he took the unsaleable fish home for bear bait out the back door.
>
> Plaintiff at worst is guilty of ordinary negligence or a good faith error in judgment or discretion. Under the *Carter* doctrine this is not statutory misconduct.
>
> Reversed. Costs to plaintiff.

An order in conformity with this opinion was entered on November 26, 1982. From this order, respondent appeals.

We must determine on appeal whether the trial court erred in reversing the MESC Board of Review.

MCL 421.38; MSA 17.540 provides in part:

> The circuit court . . . may review questions of fact and law on the record made before the referee and the board of review involved in a final order or decision of the board, and may make further

orders . . . as justice may require, but the court *may reverse* an order or decision *only if it finds that the order or decision is contrary to law or is not supported by competent, material and substantial evidence on the whole record.* [Emphasis added.]

On appeal from decisions of the board of review, this Court's review is limited.

The Court of Appeals "may review questions of law or fact, Const 1963, art 6, § 28; MCL 421.38; MSA 17.540, but it can reverse only if" the board of review's decision or order "is contrary to law or is unsupported by competent, material and substantial evidence on the record." *Gormley v General Motors Corp,* 125 Mich App 781, 784-785; 336 NW2d 873 (1983). See also *Bowns v City of Port Huron,* 146 Mich App 69; 379 NW2d 469 (1985); *Washington v Amway Grand Plaza,* 135 Mich App 652; 354 NW2d 299 (1984).

The reviewing court "cannot substitute its own judgment for that of the administrative agency if there is substantial evidence which supports the agency." *Smith v Employment Security Comm,* 410 Mich 231, 256; 301 NW2d 285 (1981). "[W]here substantial evidence exists to support both sides and the agency must make a judgment assigning credibility to one side, we may not substitute our judgment for that of the agency." *Id.* p 261. Where "there is no dispute as to the underlying facts relative to the issues raised in this appeal, the questions presented are to be treated as matters of law." *Robinson v YMCA,* 123 Mich App 442, 445; 333 NW2d 306 (1983). The scope of appellate review includes the soundness of the MESC's interpretation of misconduct. *Washington, supra,* p 657; *Bowns, supra.*

In the instant case, the trial court found that

the single complained-of incident did not rise to the level of misconduct which would have warranted disqualification for benefits under former § 69. Thus, the court reversed on the ground that the review board's decision was contrary to law.

When this case arose, disqualification from unemployment compensation for misconduct was covered by MCL 421.69(2)(b); MSA 17.569(19)(2)(b) which stated:

> (2) An individual shall be disqualified for benefits, in all cases in which he or she:
>
> * * *
>
> (b) Has been discharged for misconduct connected with his or her work, or for intoxication while at work unless the discharge has subsequently been reduced to a disciplinary layoff or suspension. [MCL 421.69(2)(b); MSA 17.569(19)(2)(b), current version at MCL 421.29(1)(b); MSA 17.531(1)(b).]

In *Carter v Employment Security Comm, supra*, the Supreme Court adopted the following definition of misconduct:

> The term "misconduct" . . . is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judg-

ment or discretion are not to be deemed "misconduct" within the meaning of the statute. [*Id.*, p 541.]

It is the employer's burden to show statutory misconduct. *Fresta v Miller,* 7 Mich App 58, 63-64; 151 NW2d 181 (1967).

The only question of law presented by this appeal is whether a finding of misconduct under the statute may be based upon removal of property of an employer which has de minimis value when the removal of such property is contrary to the employer's established rules and procedures.

The referee did not disqualify claimant from receiving benefits on the ground that he was guilty of theft. The reason he did not, was because the employer had failed to establish the value of the fish. Further, since the fish had been removed from the store and no person of appropriate authority had determined what its condition was at the time of removal, establishing its monetary value would have been very difficult. In the alternative, the referee concluded that claimant was guilty of misconduct because he had removed the property contrary to established rules and procedures.

The referee found:

> that any employer may hold a reasonable expectation of examination and of approval or denial with respect to removal of any property which has not been clearly designated, by segregation, from stock inventory or otherwise devalued, in a manner free of self-dealing whether or not the merchandise removed had a prospect of sale value, to the employer, the property right remained the employer's and in former times, claimant had either removed articles already set out in the bone barrel or approved for removal by the supervisor at hand.

Claimant acted at his peril in retaining control over merchandise removed from freezer to cooler until he could transport it away without seeking the review of either the department manager or store manager. Claimant has not demonstrated that any authority he held to operate the department on the manager's day off included the authority to dispose of stale stock, particularly when the article held intrinsic value influencing the self interest of the claimant.

It is clear that, while misconduct may justify an employee's discharge for breach of company rules, not every such breach rises to the level of misconduct sufficient to disqualify the employee for unemployment benefits. *Reed v Employment Security Comm,* 364 Mich 395; 110 NW2d 907 (1961).

[A]n employee's continual violation of an employer's rules may amount to a substantial disregard of the employer's interests. [*Razmus v Kirkhof Transformer,* 137 Mich App 311, 316; 357 NW2d 683 (1984).]

A single incident of misconduct may fall within the statutory meaning of misconduct. See *Booker v Employment Security Comm,* 369 Mich 547, 548-555; 120 NW2d 169 (1963) (opinion of BLACK, J., and opinion of KAVANAGH, J.).

The claimant herein violated the rule by removing the store's property in a manner contrary to store procedure. However, we believe under the *Carter* definition of misconduct that the trial court correctly determined that the claimant's misconduct did not give rise to the level of statutory misconduct as was found by the referee and the board of review. Although there were procedures for removing inventory by store personnel, the management was cognizant of the fact that claim-

ant had been taking scrap for several years once it was placed in the scrap barrel. Because a manager was not there, claimant made an error of judgment in his determination that he had the authority to decide whether or not to scrap the fish. He made the decision and bypassed the scrap barrel procedure. Claimant breached rules by not asking the meat manager for permission (and thus concluding that the thawed fish was scrap) and by removing the fish by the back door.

We believe that, while claimant's conduct may have been negligent, he did not wilfully and wantonly disregard his employer's interests. We do point out that the referee found respondent's conduct to be misconduct regardless of whether the fish was saleable or not. The trial court erred in its statement that a finding of unsaleability was made. We also believe that claimant's determination that the fish was unsaleable was a good faith error in judgment and did not evidence an evil design or show a substantial disregard of the employer's interests.

Therefore, we affirm the lower court's reversal of the MESC Board of Review's decision. We find it unnecessary to address the remaining issue raised by defendant in light of our disposition here.

Affirmed.

J. NOECKER, J. *(dissenting).* This writer is of the opinion that the referee's decision and the board of review's affirmance are "supported by competent, material, and substantial evidence on the whole record," MCL 421.38; MSA 17.540, and that the circuit court erred in reversing that decision.

On July 20, 1982, claimant Tuck and another employee were making room for new stock in a display cooler at Ashcraft's Market in Gladwin. Jim McMore, the store manager, told Tuck and

another employee to make the room. Normally, the meat manager would have given the instructions, but the meat manager was absent on the twentieth.

Tuck testified that he noticed that some fish in the display cooler were thawed and smelled. Tuck removed two cartons of fish from the display cooler, one of which contained fifteen to seventeen individually wrapped packages of fish. One carton was estimated to be worth $45 to $55. Tuck stated that the normal procedure for removing unsaleable meat items was to place them outside the back door in a bone barrel, from which they would be taken by a chemical company or by individuals for use as bear bait.

Tuck removed one of the cartons by first placing the carton in the meat room and later transferring the carton from the meat room to his truck through the back door of the market. The other carton was removed by first placing the carton in the meat room, then returning the carton to the display cooler, then, while Tuck was at the market shopping after work that evening, transferring the carton from the display cooler to his truck through the back door of the market. Although the normal policy would have been to get the manager's permission before taking unsaleable items, Tuck testified that he assumed that he could deem the fish unsaleable in the manager's absence.

Bell Jesse, manager of Ashcraft's, testified that it was not within Tuck's scope of authority to determine whether inventory was unsaleable, that only the store manager or the department manager had such authority, and that the date stamped on the packages was the packaging date, not the expiration date. Jesse also testified that it was strictly against company rules to remove inventory out the back door of the market, and that the back

door was to be used only for unloading delivery trucks and removing garbage. The rule was required for security reasons and the company handbook prohibited use of the back door for other purposes. The handbook prescribed the appropriate method for removing items from the store. Tuck acknowledged having read the handbook. Tuck had been informed that his predecessor had been fired for unauthorized use of the back door.

Bill Patch, the meat division supervisor for all of Ashcraft's supermarkets, was in the Gladwin store on July 20. When he entered the store, he noticed Tuck carrying a box of fish from the display cooler to the meat room. Later, he noticed a box of fish in Tuck's truck. Still later, he noticed Tuck carrying a box of fish from the meat room back to the display cooler, which Patch thought was unusual. When Patch returned the next day, he noticed that the box of fish that Tuck had returned to the display cooler the previous day was missing. Patch's investigation led to Tuck's admission that he had taken the two boxes of fish, and to Tuck's dismissal.

The question raised by this appeal is whether Tuck was properly denied unemployment benefits for misconduct connected with his work. The applicable statute was MCL 421.69(2)(b); MSA 17.569(19)(2)(b), currently MCL 429.21(1)(b); MSA 17.531(1)(b), which provided:

> (1) An individual shall be disqualified for benefits, in all cases in which he or she:
>
> \* \* \*
>
> (b) Has been discharged for misconduct connected with his or her work . . . .

The majority opinion sets forth the *Carter* definition of misconduct and the referee's findings of

misconduct. However, the majority agrees with the trial court that Tuck's action did not rise to the level of statutory misconduct as was found by the referee and the board of review. The majority does not dispute that Tuck's act breached a standard of behavior which the employer had a right to expect, but rests its opinion on the conclusion that the act was not wilful. The majority concludes that:

> Because a manager was not there, claimant made an error of judgment in his determination that he had the authority to decide whether or not to scrap the fish. He made the decision and bypassed the scrap barrel procedure. Claimant breached rules by not asking the meat manager for permission (and thus concluding that the thawed fish was scrap) and by removing the fish by the back door.
>
> We believe that, while claimant's conduct may have been negligent, he did not wilfully and wantonly disregard his employer's interest.

This conclusion ignores the fact that, although the meat manager was absent, the store manager and the regional meat manager were present. Although it is not clear from the record whether the regional manager had the authority to deem inventory unsaleable, it is clear that the store manager did. It may certainly be inferred that the meat manager's absence was not the only reason that Tuck failed to get permission to remove the fish.

Beyond the failure to obtain proper permission, Tuck's action is characterized by the majority as simply bypassing the scrap barrel in an otherwise normal procedure for removing scrap. Indeed, the insinuation is that it would have been rather senseless for Tuck to have put the fish in the scrap

barrel, only to immediately remove it and place it in his truck.

However, while Tuck's removal of the first package may have been relatively normal (except for the failure to get prior permission and the bypassing of the scrap barrel), the removal of the second package was, as Patch testified, unusual. Tuck took the second package first to the meat room, then, after Patch's arrival, back to the display cooler. Then he returned after his shift, and after Patch's absence, to remove the second package from the display cooler. Such conduct supports the conclusion that Tuck purposefully avoided removing the fish in Patch's presence, and that Tuck returned at a time when he could remove the fish undetected.

Such conduct is evidence of a wilful disregard of company rules, and the referee found misconduct based on that evidence:

> Claimant acted at his peril in retaining control over merchandise removed from freezer to cooler until he could transport it away without seeking the review of either the department manager or store manager.

This writer is of the opinion that the record supports a finding of wilful behavior, and, therefore, that the referee's decision is "supported by competent, material, and substantial evidence on the whole record," MCL 421.38; MSA 17.540. Consequently, this writer would vote to reverse the lower court and reinstate the decision of the referee and board of review.