*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEWIS A. ZAJAC,

        Claimant-Appellee,

v

DEPARTMENT OF LABOR AND ECONOMIC
OPPORTUNITY/UNEMPLOYMENT
INSURANCE AGENCY, formerly known as
DEPARTMENT OF LABOR AND ECONOMIC
DEVELOPMENT/UNEMPLOYMENT
INSURANCE AGENCY,

        Appellant,
and

CHAMPION BUS, INC.,

        Appellee.

UNPUBLISHED
March 24, 2020

No. 345580
Lapeer Circuit Court
LC No. 2018-051853-AE

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

The Department of Labor and Economic Opportunity (DLEO) appeals by leave granted the circuit court's opinion and order reversing the decision of the Michigan Compensation Appellate Commission (MCAC), denying unemployment benefits to claimant.[1] On appeal, the DLEO argues that the circuit court misapplied the legal principles governing judicial review of an administrative determination. We reverse the circuit court's decision and reinstate the MCAC decision affirming the disqualification from receipt of unemployment benefits.

---

[1] *Zajac v Michigan Unemployment Insurance Agency*, unpublished order of the Court of Appeals, entered March 28, 2019 (Docket No. 345580).

## I. BASIC FACTS AND PROCEDURAL HISTORY

Claimant worked for Champion Bus, Inc. (Champion), from 2013 through 2017. On June 16, 2017, claimant was working as the lamination team lead, building buses for Champion, under the direction of his supervisor Dustin Pennington. At some point during that afternoon, Pennington directed claimant to bring an additional bus into the production area. Claimant refused, stating that the production line had become "jammed up" and that it was impossible to fulfill Pennington's request. A confrontation between the two men ensued, and—at this point—their factual accounts diverge. Pennington claims that during the course of the exchange, claimant verbally threatened him. Conversely, claimant asserts that despite his attempts to defuse the situation and explain why the task was impossible, Pennington continued to insist the additional bus be brought into the production area and acted in a threatening and harassing manner to claimant. Two Champion employees, Michael Brown and Christopher Vyt, witnessed the confrontation. While Brown and Vyt could see that claimant and Pennington "exchanged words," neither Brown nor Vyt could hear what was said.

After the confrontation, Pennington and claimant went to Champion's Human Resources (HR) Department. Pennington reported claimant's threat to HR manager Carolee Ehrke and claimant spoke with HR assistant Robin Pape. While claimant was speaking with Pape, Ehrke entered the office and informed claimant he was suspended until further notice pending an investigation into his threat against Pennington. Champion had a zero-tolerance policy concerning threats in the workplace. On June 19, 2017, Ehrke informed claimant by telephone that Champion was terminating his employment. A few days later, claimant received a termination letter, signed by Pape, stating he had been terminated for making threats and failing to follow directions.

Claimant sought benefits from the Michigan Unemployment Insurance Agency (Agency). Initially, the agency determined that claimant had not committed misconduct and was, therefore, not disqualified from receiving benefits. Champion appealed this determination, and a hearing was held before an administrative law judge (ALJ). The ALJ heard testimony regarding the circumstances concerning the termination of claimant's employment, and issued a written decision finding that claimant had threatened Pennington and failed to follow Pennington's directions. Together these actions, the ALJ concluded, constituted misconduct that disqualified claimant from receiving unemployment benefits. Claimant appealed the ALJ's decision to the MCAC. Denying claimant's request for written argument, the MCAC determined that "the ALJ's findings of fact accurately reflect the evidence introduced during the hearing. The ALJ properly applied the law to those facts. It is our opinion that the ALJ's decision should be affirmed."

Claimant next appealed the MCAC's decision to the Lapeer Circuit Court. After oral argument by claimant and the DLEO, the circuit court reversed the MCAC's decision. In its opinion, the circuit court found the ALJ erred in relying on the testimony of Pape and Ehrke in determining that claimant threatened Pennington. The circuit court also determined the ALJ and MCAC were incorrect in concluding that claimant's behavior constituted misconduct disqualifying claimant from receiving unemployment benefits. We granted the DLEO's application for leave to appeal.

## II. STANDARD OF REVIEW

We examine "a lower court's review of an administrative decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings, which is essentially a clear-error standard of review." *Braska v Challenge Mfg Co*, 307 Mich App 340, 351-352; 861 NW2d 289 (2014) (quotation marks and citation omitted). Applying this standard, "the circuit court's legal conclusions are reviewed de novo and its factual findings are reviewed for clear error." *Id*. at 352 (citation omitted). "A finding is clearly erroneous where, after reviewing the record, this Court is left with the definite and firm conviction that a mistake has been made." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 585; 701 NW2d 214 (2005).

## III. ANALYSIS

The DLEO asserts that the circuit court misapplied the standard of review when examining the MCAC's decision and impermissibly replaced the findings of fact made by the ALJ with its own reasoning. We agree.

Under the Michigan Employment Security Act, MCL 421.1 *et seq.*, "an individual is disqualified from receiving benefits if he or she: . . .[w]as suspended or discharged for misconduct connected with the individual's work or for intoxication while at work." MCL 421.29(1)(b). After a hearing before an ALJ and review by the MCAC, a party can appeal the administrative determination concerning whether he or she is disqualified from receiving unemployment benefits to the circuit court. See MCL 421.38. As our Supreme Court explained in detail in *Hodge v United States Security Ass'n*, 497 Mich 189, 193-194; 859 NW2d 683 (2015):

> MCL 421.38 . . . addresses an appeal from the MCAC to a circuit court:
>
>> The circuit court . . . may review questions of fact and law on the record made before the administrative law judge and the Michigan compensation appellate commission involved in a final order or decision of the [MCAC], . . . but the [circuit] court may reverse an order or decision only if it finds that the order or decision is contrary to law or is not supported by competent, material, and substantial evidence on the whole record.
>
>> Using this standard, a circuit court *must affirm* a decision of the ALJ and the MCAC if it conforms to the law, and if competent, material, and substantial evidence supports it. A reviewing court *is not* at liberty to substitute its own judgment for a decision of the MCAC that is supported with substantial evidence. [Citations omitted and emphasis supplied.]

Thus, the task of the circuit court in this case was two-fold: to determine (a) whether the MCAC's affirmation of the ALJ's decision was supported by "competent, material, and substantial evidence on the whole record," MCL 421.38(1), and (b) "whether the MCAC

operated in the correct legal framework." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 435; 906 NW2d 482 (2017).

Our review of the record leads us to conclude that the factual findings made by the ALJ, and affirmed by the MCAC, were supported by substantial evidence on the administrative record. The substantial-evidence test, used when assessing the factual conclusions made during an administrative proceeding, requires a reviewing court to determine whether the ALJ's decision "was supported by competent, material and substantial evidence on the whole record." *Boyd v Civil Serv Comm*, 220 Mich App 226, 232-233; 559 NW2d 342 (1996) (quotation marks and citation omitted). "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *VanZandt*, 266 Mich App at 584 (quotation marks and citation omitted). "Evidence is competent, material, and substantial if a reasoning mind would accept it as sufficient to support a conclusion." *City of Romulus v Mich Dep't of Environmental Quality*, 260 Mich App 54, 63; 678 NW2d 444 (2003). In his decision, the ALJ found that claimant made a veiled threat, but a threat nonetheless, against Pennington. This determination was supported by Pennington's testimony directly recounting the incident and claiming that claimant had become angry and threatened him, as well as the testimony of Ehrke and Pape concerning the HR investigation. Similarly, the ALJ found that claimant refused to carry out the task Pennington directed him to perform. While their characterizations differ, the testimony of both Pennington and claimant demonstrate that claimant refused to add an additional bus to the production as Pennington directed. Applying the substantial-evidence test to the record before the ALJ, it is clear that a reasonable mind could accept this evidence as supporting the determination that claimant did, in fact, threaten Pennington and refuse to perform a requested task.

While the circuit court correctly performed its task in analyzing all the evidence in the record to determine if substantial evidence supported the findings of the ALJ and the MCAC, it appears that the circuit court conflated this task with requiring that all the evidence in the record had to support the ALJ's findings. When sitting as the trier-of-fact in an administrative proceeding, it is the ALJ who "heard testimony . . ., reviewed all the evidence in the record and made findings of fact based on the credibility of witnesses and weight of the evidence." *Hodge*, 497 Mich at 195. In this role, it falls to the ALJ—and not a circuit court on review—to make determinations of credibility and resolve evidentiary conflicts. *Id*. at 194-195. The circuit court's task, on the other hand, is significantly limited. It "must affirm a decision of the ALJ and the MCAC . . . if competent, material, and substantial evidence supports it. A reviewing court is not at liberty to substitute its own judgment for a decision of the MCAC that is supported with substantial evidence." *Id*. at 194. In its decision, the ALJ acknowledged the conflicting testimony adduced during the hearing. But it also performed its function as the trier-of-fact and ultimately determined that claimant threatened Pennington and refused to perform the assigned task. The circuit court's role was to determine if that conclusion was supported by evidence on the record, and not "substitute its judgment for that of the agency," because it believed the evidence warranted a different result. *VanZandt*, 266 Mich App at 584. Instead, the circuit court determined that the testimony of Pape and Ehrke did not support the ALJ's findings and that the task assigned by Pennington was impossible to complete. In doing so, it replaced the ALJ's findings with its own assessment of the record. And this, in light of the clearly defined standard of review, it could not do. As a result, it clearly erred.

Because the factual findings made by the ALJ and affirmed by the MCAC were supported by substantial evidence, the remaining inquiry addresses their legal conclusion that claimant committed misconduct contrary to law. Our Supreme Court has defined "misconduct," as the term is used in MCL 421.29(1)(b), to include "willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or . . . an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer." *Carter v Mich Employment Security Comm*, 364 Mich 538, 541; 111 NW2d 817 (1961).[2]

The ALJ found, supported by substantial evidence, that claimant verbally threatened Pennington during their confrontation. Further, claimant was aware of and subject to Champion's zero-tolerance policy concerning threats in the workplace. Thus, it is not contrary to the law for the ALJ to conclude, and the MCAC to affirm, that claimant disregarded the standards of behavior that Champion had the right to expect of its employees. In its opinion, the circuit court stated that the ALJ and MCAC failed by not expressly finding that claimant had willfully made the threat. However, after reviewing the record and the ALJ's decision, it is apparent that the ALJ made this finding. While the decision might not contain the term "willful," it is clear from the ALJ's reasoning that he found claimant threatened Pennington as a result of Pennington's legitimate direction that claimant add another bus to the production line. Moreover, if—as the circuit court appears to do—one accepts that there is credible evidence to support the finding that claimant threatened Pennington, it is difficult to conclude how the threat is anything but willful.

Analysis of the ALJ's conclusion that claimant committed misconduct by refusing to complete an assigned task is similarly straightforward. The circuit court concluded, and claimant asserts in his appellate brief to this Court, that by suspending claimant immediately after his confrontation with Pennington, Champion made it impossible for claimant to complete the task. However, the misconduct at issue is not claimant's refusal to add the bus to the production line while suspended for making a threat. Rather, it is claimant's refusal to add a bus to the production in the first place—a decision that set off the chain of events that resulted in claimant's termination. Evidence was placed on the record that claimant told Pennington the request was impossible, that he claimed Pennington did not know what was going on and that Pennington was ignorant. Applying our Supreme Court's construction of "misconduct" expressed in *Carter* and *Hodge*, it was not contrary to the law for the ALJ and MCAC to conclude that claimant's conduct was contrary to Champion's interests and fell below the standards of behavior Champion could reasonably expect from its employees.

Because the circuit court failed to properly apply the legal principles governing its review of an administrative determination, we reverse the circuit court's decision and reinstate the

_____

[2] Indeed, this definition was recently adhered to by our Supreme Court when determining if a claimant's actions amounted to misconduct. *Hodge*, 497 Mich at 192 n 1.

MCAC decision affirming the disqualification from receipt of unemployment benefits.  We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel